IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY LILLIE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-3127-N |
| | § | |
| STANFORD TRUST COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant Endurance Specialty Insurance Ltd.'s ("Endurance")
motion to dismiss [155]. Because Endurance is not subject to personal jurisdiction in
Louisiana, the Court grants Endurance's motion.

### I. HISTORY OF THE DISPUTE AND JURISDICTIONAL FACTS

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his
associates, and various entities under his control (collectively, "Stanford"). Plaintiffs are a
putative class of grantors or beneficiaries of IRA and trust accounts held with Stanford Trust
Company ("STC"), a Louisiana trust company owned and operated by Stanford. Plaintiffs'
claims arise from STC's purchase for Plaintiffs' IRA accounts fraudulent certificates of
deposit ("CDs") issued by Stanford International Bank Limited ("SIBL").

Plaintiffs also bring claims against SEI Investments Company and SEI Private Trust
Company (collectively, "SEI"). Plaintiffs allege SEI contracted with STC to provide
operational support for STC's trust functions, including reporting to account holders the

value of the SIBL CDs held in their IRA and trust accounts. As part of that operational support, Plaintiffs allege SEI provided false reports on the value of Plaintiffs' IRA account holdings. Based on their claims against SEI, Plaintiffs also assert claims against a group of entities that provided insurance coverage to SEI (collectively, the "SEI Insurers") under Louisiana's direct action statute, LA. REV. STAT. ANN. § 22:1269. Defendant Endurance is one of the SEI Insurers sued in this action.

Endurance is an insurance company organized and operating its principal place of business in Hamilton, Bermuda. Def.'s App. Supp. Mot. Dismiss Ex. 2 ¶ 3 [157]. SEI Investments Company, to which Endurance issued the relevant insurance policy (the "Policy"), *see id.* Ex. B, is organized in Pennsylvania and has its principal place of business in Pennsylvania. *Id.* Ex. 1. Endurance did not solicit SEI as a customer, nor did SEI solicit Endurance. *Id.* Ex. 2 ¶¶ 20–22. Rather, a different insurance company – Aon Risk Services, Inc. ("Aon") – negotiated the contract. *Id.* Aon's Pennsylvania offices corresponded initially with SEI, then worked through Aon offices in Bermuda to solicit Endurance to provide the Policy. *Id.* Endurance negotiated only with Aon's branch in Bermuda regarding the Policy, and ultimately issued the policy to Aon in Bermuda. *Id.* Ex. 2 ¶¶ 23–25. The policy premium was thereafter remitted to Endurance by Aon's Bermuda office. *Id.* Ex. 2 ¶ 26. Under the terms of the Policy, Endurance maintains "full and complete claims control as respects its portion of any claims or losses arising under the policy." App. Mem. Opp'n

Def.'s Mot. Dismiss 006 [162].[1]  The Policy also provides for "worldwide" coverage.  *See id.* at 011.

Outside the provision of the policy, Endurance maintains relatively few contacts with Louisiana.  For instance, from 2009 through November 19, 2014, Endurance did not receive any premiums from insureds headquartered in Louisiana.  *Id.* Ex. 2 ¶ 27.  The percentage of Endurance's premiums received from insureds headquartered in Louisiana in 2007 and 2008 was 0.0303% and 0.0810% respectively.  *Id.*  Endurance does not operate in Louisiana, own any property in Louisiana, is not licensed to do business in Louisiana, and does not market its services in Louisiana.  *Id.* Ex. 2 ¶¶ 4–9.  From the record as presented, Endurance's only contacts with Louisiana appear to be a scant number of clients headquartered in Louisiana in 2007 and 2008,[2] and SEI's transacting business with STC in Louisiana.

## II. PRINCIPLES OF PERSONAL JURISDICTION

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant and (2) exercise of personal jurisdiction by the forum state is consistent with due

---

[1]Plaintiffs appear to contend this provision means Endurance has a duty to defend the insured SEI.  Mem. Opp'n Def.'s Mot. Dismiss 13 [161].  Endurance disputes this construction.  Def.'s Reply 4 & n.3 [163].

[2]Over half of the premiums derived from Louisiana-based clients in 2007 and 2008 were from reinsurance accounts.  Def.'s App. Supp. Mot. Dismiss Ex. 2 ¶ 28.  In these reinsurance accounts, other insurers provided insurance coverage to the Louisiana residents, and remitted premiums to Endurance.  *Id.*

process under the United States Constitution.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).  "Because Louisiana's long-arm statute extends to the limits of due process, [this Court] only need[s] to determine if subjecting [Endurance] to suit in Louisiana would offend the Due Process Clause of the 14th Amendment."  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).[3]

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's – and thus a federal court's – jurisdiction over a nonresident defendant.  *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977).  But a state "may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the

---

[3]This Court, having acquired this action for pre-trial coordination from the Judicial Panel on Multi-District Litigation, must assess whether Endurance would be subject to personal jurisdiction in Louisiana, not Texas.  *See In re BP p.l.c. Sec. Litig.*, 2013 WL 5520067, at *2 (S.D. Tex. 2013) (citing *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 511 F. Supp. 2d 742, 789 (S.D. Tex. 2005)).

due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but the contacts are "are so 'continuous and systematic' as to render [the nonresident] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Under either a general or specific jurisdiction analysis, however, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Minimum contacts alone are not enough to establish jurisdiction. After the plaintiff has established minimum contacts, the defendant can still defeat the exercise of personal jurisdiction by showing "that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221–22 (5th Cir. 2012) (citations and internal quotation marks omitted). "When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999) (citations omitted).

ORDER – PAGE 5

Lillie and the putative investor class, as the parties seeking to invoke the Court's power, bear the burden of establishing the Court's jurisdiction over Endurance. *See Pervasive Software*, 688 F.3d at 219. If a district court decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d at 219–20 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citation omitted).

### III. THE COURT LACKS PERSONAL JURISDICTION OVER ENDURANCE

#### A. General Jurisdiction

Plaintiffs assert Endurance is subject to general jurisdiction in Louisiana. To support general jurisdiction, Plaintiffs must demonstrate Endurance's contacts with Louisiana were "so 'continuous and systematic' as to render [Endurance] essentially at home in [Louisiana]." *Brown*, 131 S. Ct. at 2851. Mere "continuous activity" in a state is not sufficient to subject a foreign defendant to personal jurisdiction in that state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 757 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 318).

Plaintiffs provide no evidence or allegations of Endurance's contacts with Louisiana that could plausibly support the exercise of general personal jurisdiction over Endurance. Plaintiffs suggest that the extent to which Endurance does business with entities who in turn do business in Louisiana is a relevant consideration in determining Endurance's amenability to general jurisdiction. *See* Mem. Opp'n Def.'s Mot. Dismiss 13. However, under the law of general jurisdiction as clarified in the Supreme Court's *Brown* decision, Endurance would not be subject to general jurisdiction in Louisiana even if it systematically and routinely insured clients based in Louisiana. There is simply nothing in the factual record that comes close to suggesting Endurance is "essentially at home" in Louisiana. Accordingly, the Court holds Endurance is not subject to general personal jurisdiction in Louisiana.

### B. Specific Jurisdiction

Because Endurance is not subject to general jurisdiction in Louisiana, Plaintiffs must establish it is subject to specific jurisdiction. To show specific jurisdiction, Plaintiffs must demonstrate that the causes of action involved in this case are related to or arise from Endurance's contacts with Louisiana. *See Holt Oil & Gas Corp.*, 801 F.2d at 777. The contacts cannot be "random, fortuitous, or attenuated," nor can they be the result of "the unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (citations and internal quotation marks omitted). Further, conclusory allegations will not suffice to present a prima facie case for jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Plaintiffs first argue that Endurance is subject to specific jurisdiction under a "stream of commerce" theory.[4]  *See* Mem. Opp'n Def.'s Mot. Dismiss 8–9.  In support of this argument, Plaintiffs primarily rely on *Adams v. Unione Mediterranea Di Sicurta*, 234 F. Supp. 2d 614 (E.D. La. 2002).  In *Adams*, the defendant-insurance company was based in Italy.  *Id.* at 617.  It insured a shipment of steel cargo that arrived in Louisiana, and subsequently sank and was damaged in Louisiana.  *Id.* at 616.  Finding that the defendant knew cargo that it insured was bound for and would pass through Louisiana, the Court concluded the defendant could be sued in Louisiana under the stream of commerce theory. *Id.* at 622–23.

Although the facts in *Adams* are similar to the operative facts in this case, the Fifth Circuit's subsequent decision in *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 615 F.3d 364 (5th Cir. 2010), forecloses application of *Adams*'s reasoning here. In *Choice Healthcare*, the Court reiterated that in the Fifth Circuit, foreseeability alone is sufficient to subject a defendant to personal jurisdiction under the stream of commerce theory. *Id.* at 373 (discussing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987)).  However, the Court clarified that an injury may be foreseeable to a foreign defendant not based on "unpredictable currents or eddies" of products, but where "the regular

---

[4]The "stream of commerce" theory of personal jurisdiction holds generally that if a manufacturer or distributor attempts to service the market for its product or service in one or more states by placing its products in commercial circulation, then it is not necessarily unreasonable for the manufacturer to be subject to suit in those states. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980).

and anticipated flow of products from manufacturer to distribution to retail sale" results in products being marketed in the forum state. *See id.* at 373 (quoting *Asahi*, 480 U.S. at 117 (Brennan, J., concurring)). Thus, the stream of commerce theory is applied "where a defendant places a product in the stream of commerce as part of a sales or distribution network designed to market its products nationwide . . . where it would derive financial benefit from sales in the forum." *Id.* Indeed, "[d]eriving revenue from such commercial activity is the quid pro quo for requiring the defendant to suffer suit in the foreign forum." *Id.* at 373–74.

The *Choice Healthcare* Court also cited *Perez v. Pan Am Life Ins. Co.*, 1996 WL 511748 (5th Cir. 1996) (unpublished). *Perez* involved a defendant insurance company based in Guatemala that purported to provide "worldwide" coverage and specifically approved its insured's request to travel to Houston, Texas to receive medical services. *Perez*, 1996 WL 511748, at *1. When the defendant then refused to pay the insured's claim, the insured filed suit in Texas. *Id.* The Fifth Circuit determined that the insurer was not subject to personal jurisdiction because neither the language in its policy nor its approval of the insured's travel to Texas constituted contact with Texas. *Id.* at *2.

Based on *Choice Healthcare* and its application of *Perez*, the Court holds Endurance has not had sufficient contact with Louisiana such that it may be subjected to specific jurisdiction. Like the defendant in *Perez*, Endurance purports to provide "worldwide" coverage. However, Endurance did not approve SEI's transaction of business in Louisiana.

ORDER – PAGE 9

Nor did it ever put its services in the stream of commerce such that it could expect to receive a quid pro quo from sales in Louisiana. Rather, the facts as alleged indicate Endurance provided, through a Bermudian intermediary, an insurance policy for an insured located in Pennsylvania, that then transacted with STC in Louisiana. This hardly constitutes the kind of "sales or distribution network designed to market its products nationwide" that the *Choice Healthcare* Court held was required for suit to be foreseeable in a particular forum. 615 F.3d at 373. Rather, Plaintiffs' arguments for specific jurisdiction rely on "unpredictable currents or eddies" that connected Endurance's services to Louisiana. Thus, given the *Choice Healthcare* decision and its endorsement of the reasoning in *Perez*, the Court holds Endurance is not subject to specific personal jurisdiction in Louisiana.

### IV. THE COURT DENIES PLAINTIFFS LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

Courts considering Rule 12(b)(2) motions to dismiss have discretion to permit discovery to help resolve jurisdictional questions. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). However, if Plaintiffs fail to make even a preliminary showing of jurisdiction, district courts need not permit jurisdictional discovery. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shied of Georgia, Inc.*, 995 F. Supp. 2d 587, 619–20 (N.D. Tex. 2014) (collecting cases).

Here, the Court determines jurisdictional discovery would be futile. Plaintiffs have not suggested any contacts approaching a level sufficient for a finding of general jurisdiction.

And their arguments for specific jurisdiction fall far short as well under applicable Fifth Circuit precedent.  Plaintiffs seek discovery to (a) identify the extent to which Endurance knew about SEI's business relationship with STC, and (b) to identify other clients of Endurance with business operations in Louisiana.  *See* Mem. Opp'n Def.'s Mot. Dismiss 16–18.  However, even if, as Plaintiffs allege, Endurance knew full well that SEI was transacting business in Louisiana, that still would not suffice to establish specific jurisdiction under the standards enumerated in *Choice Healthcare* and *Perez* – Endurance did not sell its policy in Louisiana or into the stream of commerce such that it derived a quid pro quo from sales in Louisiana.  As to the second piece of information requested through discovery, the Court declines to permit Plaintiffs to "conduct a jurisdictional fishing expedition seeking facts to support a claim of general jurisdiction."  *Bell Helicopter Textron Inc. v. American Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2009) (citing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1023 (Fed. Cir. 2009)).  Finding that Plaintiffs have failed to make a preliminary showing of personal jurisdiction, the Court denies Plaintiffs leave to conduct jurisdictional discovery.

### CONCLUSION

For the foregoing reasons, the Court grants Endurance's motion to dismiss and dismisses the claims against it without prejudice.

Signed April 7, 2015.

David C. Godbey
United States District Judge

ORDER – PAGE 12