IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY LILLIE, *et al.*, | * | CIVIL ACTION NO.:  3:13-CV-03127-N |
| **Plaintiffs** | * | |
| | * | |
| | * | **JUDGE DAVID C. GODBEY** |
| | * | |
| STANFORD TRUST COMPANY, *et al.* | * | |
| **Defendants** | * | **MAGISTRATE NANCY M. KOENIG** |

**********************************************************************

## JOINT REPORT OF RULE 26(F) CONFERENCE

Plaintiffs and Defendants, by and through their undersigned counsel, conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and pursuant to Magistrate Judge Koenig's May 12, 2015 Order (Doc. 172) ("May 12 Order"). This Joint Report addresses the issues identified in the May 12 Order. The parties have reached agreement on certain matters, which are reflected in this Report. Where the parties could not reach agreement, the Report sets forth both the Plaintiffs' position and the Defendants' position.

## I.   BRIEF STATEMENT OF THE CASE AND CONTENTION OF THE PARTIES

### A.   Plaintiffs' Statement of the Case:

The Louisiana based Stanford Trust Company ("STC" or the "Trust") served as the exclusive custodian for all Individual Retirement Accounts ("IRAs") that owned SIB CDs. SEI Investments Company, Inc. ("SEI") reported on all IRA accounts that owned SIB CDs by sending monthly, quarterly, or annual statements to each of the account holders which purportedly reported the fair market value of the SIB CDs.

### 1.   Procedural History

The case was initially filed on August 20, 2009 against SEI in Louisiana state court because STC was located in Baton Rouge, Louisiana, and was a Louisiana chartered trust

company. Class Certification discovery occurred in this case between the date of filing and the class certification hearing on September 20-21, 2012. The case was certified as a class action on December 17, 2012.

After the case was certified as a class action, Plaintiffs added the SEI Insurers as defendants under the Louisiana Direct Action Statute, La. R.S. 22:1269.[1] The SEI Insurers removed the case to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453(b), after the case was on appeal to the Louisiana First Circuit Court of Appeal. The case was subsequently transferred to the Multi-District Litigation proceeding entitled *In re: Stanford Entities Securities Litigation*, MDL No. 2099, United States Judicial Panel on Multi-District Litigation (the "Stanford MDL Proceeding"). On March 19, 2013, Plaintiffs filed a Motion to Remand, which was denied by this Court on October 6, 2014 (Doc. 138).

The allegations set forth in *Lillie* are substantially the same as those in *Roland, et al. v. Green, et. al.* ("*Roland*")[2], which was one of the consolidated cases before the United States Supreme Court in *Chadbourne & Parke, LLP v. Troice*, 134 S.Ct. 1058 (2014). Undersigned counsel for SEI represented the *Roland* defendants in the proceedings before the United States Supreme Court. The class representatives in the *Lillie* case are the same plaintiffs as in *Roland*. SEI, a defendant in both *Lillie* and *Roland*, has repeatedly asserted that *Roland* controls *Lillie*'s fate. On February 26, 2014, the Supreme Court of the United States ruled that the state law claims against SEI were not pre-empted by federal law (and the Plaintiffs have stated a viable

---

[1] "SEI Insurers" means Allied World Assurance Company (U.S.), Inc., Continental Casualty Company, Arch Insurance Company, Indian Harbor Insurance Company, Nutmeg Insurance Company, and Certain Underwriters at Lloyd's of London subscribing to Policy Nos. FD0805144, FD0805145, FD0805146, FD0805149, who removed this case on March 11, 2013.

[2] "*Roland*" refers to *Roland, et al. v. Green, et al.*, Docket No. 581,479, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

cause of action against SEI under state law). The Plaintiffs are all U.S. citizens and include approximately 1100 class members who had IRA accounts at STC and owned SIB CDs. Based upon internal reports of the State of Louisiana through the Office of Financial Institutions ("OFI"), the amount of SIB CDs held by IRA accounts at STC was approximately $350,000,000. Substantially all of the named class members are approaching or already exceed 70 years of age. Time is of the essence in the resolution of this case.

SEI is registered on the New York Stock Exchange as "SEIC" and is a leading global provider of outsourced asset management, investment processing and investment operations solutions. SEI put its internationally known and respected brand name behind Stanford Financial, the Trust, and Stanford International Bank ("SIB"), thereby lending recognition and credibility to Stanford Financial, the Trust, and SIB and supporting its sales efforts. SEI consistently, year after year, allowed its name to be mentioned prominently in SIB's Annual Reports, alongside Allen Stanford and Jim Davis and the rest of the SIB Board of Directors and the management of SIB, therefore lending more legitimacy to the overall operations of Stanford Group ("SG"), the Trust, and SIB.

Two unique facts set this case apart from others pending in the MDL. First, SEI had a "cradle-to-grave" relationship with Stanford Trust from the time STC formed in 1998 to its financial demise in February of 2009. SEI provided STC the trust operating expertise for the IRA accounts owning SIB CDs. Secondly, the only security SEI reported on for STC was the SIB CDs owned by the IRA plans in the custody of STC. The IRA accounts—of which Stanford Trust was the custodian—only owned SIB CDs. Allen Stanford's plan to use the IRA accounts to own SIB CDs could not have been accomplished without SEI serving as the de facto trust company, and agreeing to report the value of the SIB CDs. The evidence will show at trial that

Stanford Group's clearing business, provided by Bear Stearns and Pershing, LLC ("Pershing"), did not report the value of the SIB CDs on the statements generated by Bear Stearns or Pershing. SEI was the only company that reported on the purported market value of the SIB CDs.

SEI provided Stanford Trust 100% of the expertise required to operate its trust company for the sale of SIB CDs to the STC IRA accounts. One of the issues that will be litigated in this proceeding will be whether the historical relationship between SEI and Stanford Trust, in which SEI performed all of the trust services from the beginning of the Stanford Trust to the date of the receivership, creates a duty of inquiry into the investments of Stanford Trust given the association of the Trust with the securities offering of SIB.

SEI had knowledge that the SIB CDs were being marketed to individual investors and retirees who had IRAs because the SIB CD was the only security reported on by SEI for Stanford Trust. Acting on behalf of SG and the Trust, and at its behest, SEI created and transmitted monthly and quarterly reports to each Plaintiff which valued the SIB CDs for over ten years.[3] SEI knew that the IRA beneficiaries were receiving the statements and relying on their contents. The Plaintiffs received the reports created and transmitted by SEI, justifiably relied upon them and, based upon them and the information provided by SG and Trust, formed the belief that the SIB CDs were legitimate investments that were valued correctly.

SEI knew that the Plaintiffs would, and did, rely on the statements. Indeed, the very purpose of the reports rendered by SEI was to influence the investors' decision-making process in favor of purchasing and continuing to hold SIB CDs. But for Defendants' participation, Stanford Financial, the Trust, and SIB could not have sold unregistered securities to Plaintiffs

---

[3] All other securities (other than the SIB CDs) held by IRA accounts were held by Pershing and reported on by Pershing, LLC. SEI's primary function was reporting on the IRA Accounts that only owned SIB CDs.

and similarly situated owners of IRA accounts at the Stanford Trust. Thus, Plaintiffs have brought claims against SEI under:

1.  Section 712(D) of the Louisiana Securities Law—Liability For "Any Person In Connection With Sale Of Any Security";

2.  Sections 712(A)(1) and 712(A)(2) of the Louisiana Securities Law—Liability as a Seller based upon substantial assistance or substantial factor in implementing the Ponzi scheme; and

3.  Secondary Liability against SEI under Section 714(B) of the Louisiana Securities Law.

A substantial difference of opinion exists as to when document discovery and depositions should commence and the scope of the discovery. SEI, SEI Insurers and Plaintiffs have not been able to agree on the timing of the production of the documents or the commencement of discovery. SEI, Insurers, and Plaintiffs have agreed that they will exchange a proposed draft of documents to be produced by June 15, 2015.

### 2.    **Plaintiffs' Position on Discovery and Expedited Hearing**

Several factors should be considered by the Court. **First**, Plaintiffs believe, based upon SEI employees' testimony in the class action certification, a substantial database of documents has already been put together by SEI. The argument that SEI may be required to incur undue expenses has little merit and is mere legal posturing to delay the proceedings. The Court should order a verification from SEI on the status of the Stanford database.

**Second**, SEI believes that it should not be required to produce the relevant documents in this litigation or commence depositions until the Court rules on the pending motion to dismiss and has had the opportunity to review the Louisiana district court class certification judgment.

Plaintiffs submit that both of these issues have been previously ruled upon by the state court, and any further review would violate the *Rooker Feldman* doctrine. In any event, the Court has indicated in other Stanford cases that persons similar to SEI who enabled the Ponzi scheme are not entitled to dismissal.[4]

Plaintiffs submit that the trial and discovery in this case should be expedited for the following reasons:

1.    This is the only case that has been certified as a class action.

2.    The members of the class are substantially all retirees from all states, who are U.S. citizens and who purchased SIB CDs in their IRA account at the Stanford Trust Company, a Louisiana chartered trust company. Many are in excess of 70 years old and need the funds for current retirement.

3.    The United States Supreme Court has already ruled that federal law does not pre-empt the claims under the Louisiana Securities Law in *Chadbourne, supra*, for these class members.

4.    Unlike the other proceedings, the insurers are parties to the litigation because of the Louisiana Direct Action Statute. The potential exists for this case to be brought to a quick conclusion because coverage will not be litigated separately in another action.

Any further delay in conducting discovery on the merits of this case would effectively leave many of these Plaintiffs, who have already suffered major financial losses, with no remedy, or delay any remedy beyond their lifetime. Additionally, further delays are likely to prejudice

---

[4] *See, e.g., Kneese, et al. v. Pershing LLC*, Case No. 3:10-cv-01908, United States District Court, Northern District of Texas, Doc. 21 (finding that Pershing, an entity that similarly enabled the Stanford Ponzi scheme, was not entitled to dismissal of the securities law claims alleged against it). *See also Turk v. Pershing LLC*, Case No. 3:09-cv-02199, United States District Court, Northern District of Texas, Doc. 125 (same).

the Plaintiffs by compromising the quality of evidence and availability and veracity of witness testimony because of the already significant passage of time. Thus, discovery should proceed with all due haste.

### 3.     Insurers as Defendants

The SEI Insurers are Defendants in the litigation because of the Louisiana Direct Action Statute. The trial of this matter will be held in the United States District Court of the Middle District of Louisiana after discovery is completed.

### B.     Defendants' Statement of the Case:

SEI Private Trust Company and SEI Investments Company (collectively the "SEI Defendants") dispute most of the characterizations made by Plaintiffs and further contend that all claims against them fail as a matter of law. Like all matters consolidated in the Stanford MDL, *Lillie* "arise[s] out of the collapse of the Stanford Group and its related companies and affiliates." *See*, Am. Pet. ¶ 4. Specifically, Plaintiffs allege that they were harmed by a fraud allegedly perpetrated by R. Allen Stanford and companies under his control, including Stanford Trust Company ("Stanford Trust"). *Id.* ¶¶ 4, 6-7. Although the underlying factual allegations of *Lillie* support the decision by the Judicial Panel for Multidistrict Litigation to consolidate *Lillie* into the Stanford MDL for purposes of coordinated pre-trial proceedings, the procedural posture of *Lillie* is unique, and the legal issues addressed in the SEI Defendants' pending Motion to Dismiss are dispositive, or will evolve in the event the District Court denies the Motion to Dismiss.

*Lillie* was originally filed in state court in Baton Rouge, Louisiana as a putative class action against the SEI Defendants, Louisiana's Office of Financial Institutions ("OFI"), and the

Stanford Trust.[5]  After the parties engaged in extensive class-related discovery and litigated in state court for nearly three and a half years, a three-day class certification hearing was held, after which the state court granted class certification based on Louisiana state class action rules, which differ in important respects from the federal standards. The state court declined to reach many of the SEI Defendants' arguments in opposition to class certification based on its determination that the SEI Defendants' arguments would require the state court to evaluate the merits of the claims, including how Plaintiffs' claims could be established on the merits (which the state court regarded as improper under Louisiana procedural law).  The SEI Defendants perfected timely appeals to the state appellate court.

Shortly after the appeals were filed in January 2013, Plaintiffs moved to amend their Petition. The Amended Petition, *inter alia*, changed numerous allegations and also added as new defendants seven primary or excess insurers of the SEI Defendants.  The newly-added insurers then removed the action to the United States District Court for the Middle District of Louisiana.[6] The Amended Petition asserts only a single count against the SEI Defendants for purported violations of the Louisiana Securities Law.  Pet. ¶¶ 102-22.

In order to establish liability under the Louisiana Securities Law, Plaintiffs must allege and show that the SEI Defendants individually either (1) offered to sell or sold a security in violation of certain provisions; or (2) was a control person, general partner, executive officer or director (or their equivalent) of the primary wrongdoer, or was a "dealer or salesman who participate[d] in any material way" in the sale or offer to sell to the plaintiff.  La. Rev. Stat. Ann. § 51:714(B).  Contrary to Plaintiffs' assertions above, neither Section 712(A)(1) nor 712(A)(2)

---

[5] Stanford Trust was originally named as a defendant in this action, but Plaintiffs voluntarily dismissed Stanford Trust in March 2010.

[6] On October 6, 2014, Judge Godbey denied Plaintiffs' motion to remand.  *See* Doc. 138.

imposes liability as a seller based upon "substantial assistance" or "substantial factor" in implementing the scheme; indeed the word "substantial" appears nowhere in those sections. *See* La. Rev. Stat. Ann. §§ 51:712(A)(1)-(2) ("A. It shall be unlawful for any person: (1) To offer to sell or to sell any security in violation of R.S. 51:703, 705, or any rule, regulation or order promulgated or issued by the commissioner under this Part. (2) To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.")

Nor can Plaintiffs seek to hold the SEI Defendants secondarily liable based on the "substantial assistance" or "substantial factor" test. The Louisiana Securities Law expressly provides that secondary liability can only be imposed on "[e]very person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale." La. Rev. Stat. Ann. § 51:714(B). The statutory language of Section 714, like Sections 712(A)(1)-(2), does not use the word "substantial." Thus, secondary liability under the Louisiana Securities Law depends solely upon the person's status and, for those persons who are a dealer or salesman, that person's participation "in any material way in the sale." In this regard, the narrow scope of liability under the Louisiana Securities Law differs from that of other states, such as Texas, that this Court has analyzed as part of the MDL.

The Amended Petition fails to allege facts that establish either form of liability.  The SEI Defendants assert that SEI Private Trust Company performed certain computer functions for Stanford Trust that are defined by contract and that it played no role whatsover in valuing SIB CD's.  In addition, the account statements that were sent to Plaintiffs in no way purported to be statements of the SEI Defendants.  In any event, there is no allegation that the SEI Defendants offered or sold anything to any Plaintiff as required by the primary liability provision of the Louisiana Securities Law, and indeed none of the Plaintiffs who were deposed as part of the class certification proceedings asserted that the SEI Defendants offered or sold CD's to them. Moreover, Plaintiffs do not allege and cannot allege that either of the SEI Defendants had the status of one who controlled Stanford Trust in any way or met the statutory definition of a "salesman" or "dealer" under the secondary liability provisions of the Louisiana Securities Law. The SEI Defendants filed exceptions to the claims in the Amended Petition in Louisiana state court, and—at the request of Judge Godbey—have refiled their exceptions as a Motion to Dismiss under federal pleading standards.  That Motion is still pending.  Significantly, a ruling on that Motion has the potential to either moot the need for discovery altogether or to considerably narrow the scope of necessary discovery.

Contrary to Plaintiffs' assertion, no court has previously ruled on the matters raised by the SEI Defendants' Motion to Dismiss.  The Supreme Court's ruling in *Roland*, like the rulings from the Fifth Circuit and Judge Godbey which preceded it, solely concerned whether SLUSA applied, not whether the Plaintiffs stated a viable claim under state law.  Moreover, the Louisiana state court never ruled on the exceptions to the Amended Petition in this case, which were pending when the case was removed.  The prior court ruling on exceptions related to the original petition, not the Amended Petition, which differed materially from the Amended Petition, and

applied Louisiana pleading standards, not the federal pleading standards under Rule 12(b)(6). There can be no question that no court has ever tested Plaintiffs' allegations under the federal pleading standards and found them sufficient.

The Supreme Court has emphasized the importance of the federal pleading standards in preventing plaintiffs from obtaining discovery on baseless claims. It noted that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Supreme Court has held that, "the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." *Id.* at 684-85. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side" (internal quotation marks and citation omitted))." Thus, the Plaintiffs' entitlement to discovery and the scope of any discovery will turn on whether any claims survive scrutiny under the federal pleading standards.

Plaintiffs seek to avoid this point by arguing that the SEI Defendants have already collected information in a database so the burden of discovery on the SEI Defendants will be minimal. In addition to the fact that this assertion runs contrary to statements by the Supreme Court that discovery should be limited to claims based on more than conclusions, the argument also fails because it mischaracterizes the burden of discovery. The SEI Defendants have preserved data but have not yet reviewed the preserved data for privilege, confidentiality or responsiveness, and that review process will be very time-consuming and expensive.

The discovery taken prior to class certification, while extensive, did not focus fully on the

merits of Plaintiffs' claims.   As a result, should the Court deny the Motion to Dismiss, merits discovery will need to be taken of the nearly 90 named Plaintiffs, the parties' expert witnesses, and various Stanford entities.[7]  Defendants have specific concerns about the scope of discovery and the expenditure of resources in general at this time given that the scope of discovery may change depending on the Court's ruling on the Motion to Dismiss.  For example, if the Court were to conclude that there was a possible alleged basis for asserting that one of the SEI Defendants had a status of control over Stanford Trust, it might be prudent to limit or phase discovery to address such a narrow issue.    Therefore, although Defendants are agreeable to moving the litigation forward in some respects while the Motion to Dismiss is pending, proceeding with discovery above and beyond what has been agreed to by the parties, prior to the decision on the Motion to Dismiss, will potentially create an unnecessary burden and cost for all parties.   For this reason, Defendants contend that the most efficient way for this litigation to proceed is for the Court to limit current activities, pending a decision on the Motion to Dismiss, to  (1)  initial  disclosures;  (2)  discovery  planning,  including  ESI  negotiations;  (3)  limited production of documents; (4) exchange of draft discovery requests; (5) establishing a briefing schedule to resolve the question of whether this case is properly certified as a class action; and (6) identification of key players.  Additional detail on these actions is discussed, *infra*, at §V.

As noted above, the state court's decision on Plaintiffs' motion for class certification was based on Louisiana state class action rules.  Therefore, pursuant to the Fifth Circuit's guidance in

---

[7] As noted in a prior submission to Judge Godbey, although the action against the SEI Defendants was not stayed by the Second Amended Order Appointing Receiver dated July 19, 2010 (Doc. 1130 in 09-CV-298 (the "Order")), as a practical matter full merits discovery could not be conducted because of the need for discovery from various Stanford entities (Stanford International Bank, Stanford Group Company, and Stanford Trust Company) and the Receiver, as to which discovery apparently is stayed by Paragraph 9(a) of the Order.   Doc. 130.   If the SEI Defendants' Motion to Dismiss is not granted, the most efficient way to conduct discovery of the Receivership entities will be through coordinated discovery in the MDL.

*Adams v. Georgia Gulf Corp*, No. 00-12, 2000 WL 34507966 (5th Cir. May 18, 2000), the SEI Defendants after removal filed a motion in the Middle District of Louisiana requesting that the Court decline to adopt the state court's class certification order or, if the Court were inclined to adopt the state court class certification order, that the Court enter a specific order to that effect to allow the SEI Defendants to seek appellate review in the Fifth Circuit under Federal Rule of Civil Procedure 23(f). Prior to this matter being transferred to the Stanford MDL, Judge James Brady in the Middle District of Louisiana denied the SEI Defendants' motion under *Adams* "without prejudice to the movers renewing [that] motion[ ] upon a determination of removal jurisdiction." *See* Doc. 68, Case 3:13-cv-00150-JJB-RLB (April 12, 2013). Following the transfer, the SEI Defendants alerted Judge Godbey to the fact that they intend to renew the *Adams* motion and sought guidance from the Court as to when that motion should be filed. Doc. 110 & 114.[8]

Given that the scope of discovery relevant to the claims may either be eliminated or change depending on Judge Godbey's ruling on the pending Motion to Dismiss, or his ruling on class certification, Defendants propose that this Court set a briefing schedule on the *Adams* motion consistent to the schedule outlined below, and defer significant merits discovery until further rulings from the Court.

---

[8] Contrary to Plaintiffs' position that the federal court cannot review the state court decision on class certification, the *Rooker-Feldman* doctrine has no applicability here. A class certification decision is not a "judgment" for purposes of federal res judicata or *Rooker-Feldman*. In fact, the Fifth Circuit has held that *Rooker* attaches only to judgments of a state's highest court. *See Matter of Meyerland Co.*, 960 F.2d 512, 516 (5th Cir. 1992); *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (unreported). More importantly, federal courts can and do revisit class certification decisions after removal.. As the Fifth Circuit has recognized for decades, and as Judge Godbey has already noted in denying Plaintiffs' motion to remand, when an action from state court is removed to federal court it proceeds in federal court as though everything done in state court was does in federal court. *Lillie, et al., v. Stanford Trust Company, et al.*, 3:13-CV-03127-N, Doc. 138 (Order denying Plaintiffs' Motion to Remand), citing *Savell v. S Ry. Co.*, 93 F.2d 377, 379 (5th Cir. 1937). As a result, "[f]ederal judges are free to review and modify the interlocutory steps taken in the same case before its removal, a power that the federal court enjoys no matter the source of authority for removal. " *Id.*

## II.   STATUS OF SETTLEMENT DISCUSSION

No settlement discussions have occurred.

## III.   POSSIBLE JOINDER OF ADDITIONAL PARTIES

Plaintiffs do not believe at this point in time that additional parties will be joined in the litigation.  Defendants do not have any current plans to join additional parties, but note that in the absence of discovery from Plaintiffs and Stanford-related persons or entities and a decision by Judge Godbey on Defendants' pending Motion to Dismiss, Defendants reserve the right to join additional parties should discovery or Judge Godbey's opinion provide for the possibility.

## IV.   ANTICIPATED CHALLENGES TO JURISDICTION OR VENUE

**A.    Plaintiffs' Position:** If the Court is asked to review the state court's denial of SEI's motion to dismiss or the class certification judgment, Plaintiffs intend to assert the application of the *Rooker Feldman* doctrine. Pursuant to 28 U.S.C. § 1407(a), the trial of the matter will be remanded at or before the conclusion of the pretrial proceedings back to the United States District Court for the Middle District of Louisiana.

**B.    Defendants' Position:**

Defendants do not anticipate any challenges to jurisdiction or venue and note that many of those issues were previously briefed and decided by Judge Godbey.   The Defendants further note that while they do not anticipate raising a challenge to jurisdiction or venue, they recognize that pursuant to 28 U.S.C. 1407(a), actions transferred under that statute (actions that did not originate in the transferee District) are typically "remanded by the panel at or before the conclusion of [ ] pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." The timing of any such remand and the scope of any such remand, including a determination of whether or not Judge Godbey might exercise discretion to

conduct one or more bellwhether trials as part of pretrial proceedings, is a matter for Judge Godbey's discretion in the event the Motion to Dismiss is denied and depending upon any further course of the litigation.

## V.   THE DATE (MONTH/YEAR) BY WHICH THE CASE WILL BE READY FOR TRIAL AND ESTIMATED LENGTH OF TRIAL

A.   **Plaintiffs' Position:** The case will be ready for trial in June 2016. The length of time of the jury trial is two weeks. The only real issue is what duty, if any, did SEI have to perform due diligence on the operations of SIB, Stanford Trust, Allen Stanford, and his related companies. The facts are uncontested given this Court's, and the United States Fifth Circuit Court of Appeals' numerous opinions stating that there was a Ponzi scheme for the entire life of the relationship between SEI and Stanford Trust. Secondly, based upon the class certification hearing, SEI admitted that it performed no due diligence on the operations of SEI or Stanford Trust even though it reported on $400 million of SIB CDs to the Plaintiffs.

Unlike a lot of class action cases where damages are contested, the amount of loss of each class member is easily ascertained. The information is in the possession of SEI and has previously been provided to the Receiver so that the Receiver could issue a Notice of Determination in accordance with the Order of this Court. To arrive at total damages, SEI should provide a list, as of February 16, 2009, by name and address, of all account holders and their SIB CD balances. Plaintiffs submit that the issues of damages and who is entitled to damages, if liability is determined, will not be contested issues because causation as a basis for reduction of damages is not a legal issue in this case based upon the fact that the Louisiana Securities Law provides for solidary liability.

B.   **Defendants' Position**:

The Parties disagree about whether or not a trial date should be set and the length of any trial. In particular, the SEI Defendants assert that Plaintiffs' proposal of a two week trial is completely unrealistic and, although they cannot estimate at this time when this case would be ready for trial or how long a trial would last, they believe that this case would require at least six weeks to try given the number of parties and significant factual issues relating to liability and damages. In addition, the SEI Defendants disagree that discovery and trial of this case should be expedited before a ruling on the pending Motion to Dismiss.

The SEI Defendants agree, however, that certain things delineated below can move forward pending the outcome of the Motion to Dismiss, and in certain cases the parties have already begun these activities. The SEI Defendants have proposed the following:

1. The parties should exchange initial disclosures.

2. The parties have had several conferences to discuss issues relating to electronically stored information ("ESI"), including issues such as format of production, process for identifying and collecting documents, and process for addressing production of privileged or otherwise protected information (Federal Rule of Evidence 502(d) Order), and will continue to do so in an effort to establish an agreed upon ESI protocol. Subject to the Court's views, the parties will report back to the Court on or before July 16, 2015 regarding the progress of these discussions.

3. The SEI Defendants have agreed to produce the small number of relevant, non-privileged, hard copy documents that do not exist in electronic format and that were not previously produced during the class discovery phase of the action on or before July 10, 2015.

4. The parties exchanged draft discovery requests on June 15, 2015, so that the parties can understand the full extent and scope of the documents sought by the other side and begin a process of meeting and conferring to try to eliminate or minimize any disputes or issues among the parties.

5. Without Plaintiffs waiving any objection to the propriety of the Motion to Dismiss, or conceding any position advanced in that Motion, the parties will set a briefing schedule with regard to the motion Defendants intend to file pursuant to *Adams v. Georgia Gulf Corp*, No. 00-12, 2000 WL 34507966 (5th Cir. May 18, 2000), requesting that the Court

decline to adopt the state court's class certification order or, if the Court were inclined to adopt the state court class certification order, that the Court enter a specific order to that effect to allow the SEI Defendants to seek appellate review under Fed. R. Civ. P. 23(f). The SEI Defendants propose the following schedule: Defendants will file their motion pursuant to *Adams* on or before July 15, 2015; Plaintiffs' opposition will be filed on or before September 8, 2015; and Defendants' reply will be filed on or before September 28, 2015.

6. As part of the ESI negotiation process, the parties will identify those records custodians who were key players and the data sources likely to contain relevant data so that the parties can begin developing the appropriate search methodology, including, but not limited to search terms and date restrictions to be applied to the custodial documents of those individuals.

The SEI Defendants do not believe that a trial date should be set at this time. For a number of reasons, the SEI Defendants' view is that, pending a ruling on their Motion to Dismiss, proceedings in this matter should be limited to the specific activities identified above..

First, the resolution of the Motion to Dismiss could result in the complete elimination of discovery or a significant narrowing its focus. Engaging in full merits discovery before a decision on the Motion to Dismiss risks imposing an unnecessary burden and expense on all parties. Second, whether or not the case proceeds as a class action is an open question. Resolution of the *Adams* motion could significantly impact the scope, magnitude and nature of further discovery and could also result in the Fifth Circuit's permitting an appeal pursuant to Rule 23(f). Third, Plaintiffs' estimates of the time needed for discovery and trial are completely unrealistic. Plaintiffs fail to account for discovery from the nearly 90 named Plaintiffs, for expert discovery, and for discovery from the Stanford entities, which may need to be coordinated with other actions in the MDL.

For these reasons, the SEI Defendants are of the view that no trial date (or discovery cut-off date) should be set now. The SEI Defendants propose instead that should the Court deny the

pending Motion to Dismiss, in whole or in part, the parties would then meet and confer and report back to the Court within twenty (20) days with a proposed scheduling order.

## VI.    DESIRABILITY OF AND TIMING FOR ADR

### A.    Plaintiffs' Position:

Given the uncontested nature of the facts and damages, the case is suitable for resolution by ADR. The fact that the insurers are parties based upon the Louisiana Direct Action Statute further enhances the prospects of mediation.

### B.    Defendants' Position:

Defendants believe that ADR would not be productive at this time.

## VII.    OBJECTIONS TO DISCLOSURES UNDER RULE 26(A)(1)

### A.    *Name of Potential Witnesses. Rule 26(a)(1)(A)(i)-The name, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information, that the disclosing party may use to support its claims or defenses.*

**Plaintiffs' Position**: Plaintiffs have proposed that SEI should make Initial Disclosures under Rule 26 as to the witnesses and documents in its possession regarding the categories set forth on Plaintiffs' **Appendix A**. To date, no specific disclosures have been made by Defendants as to these specific categories.

SEI is mistaken in its view that it is not required to disclose the names of the persons listed on **Appendix A**, who have knowledge of the listed subject matter without a formal interrogatory. Plaintiffs cannot formulate any objection to SEI's disclosure under this section, because as of the date of this report, no disclosures have been made. As an alternative to voluntary disclosure rules of Rule 26(a)(1)(A)(i), Plaintiffs request that the court allow Plaintiffs 25 additional interrogatories to determine the names of the persons with information in this case.

**B.** **Category of Production of Documents.** *Rule 26(a)(1)(A)(ii)-A copy—or a description by category and location—of all documents, electronically store information, and tangible things, that the disclosing party has in its possession, custody or control and may use to support its claims or defenses.*

**Plaintiffs' Position**: Plaintiffs have proposed that SEI should make disclosures on the location and format of the documents in the categories set forth on Plaintiffs' **Appendix B**. No specific disclosures have been made by Defendants on specific categories of documents.

SEI is mistaken in its view that it is only required to provide the categories, and format of storage of any documents that supports SEI's defense of the case. Plaintiffs have attempted to provide SEI the list and categories of documents that should be located by SEI and the format identified by SEI. For example, if SEI has knowledge of a "smoking gun" document, it takes the position that it is not required to disclose the document pursuant to this order because it is not a document that SEI will use in the defense of the case. Plaintiffs cannot formulate any objection to SEI's disclosure under this section, because as of the date of this report, no disclosures have been made. SEI's reading of Rule 26(a)(1)(A)(ii) essentially renders it meaningless and requires the parties to focus on the discovery mechanisms in the form of Interrogatories and Production of Document requests.

One of the issues that is continuously raised by SEI is the time and expense of gathering the documents. Plaintiffs believe that the documents have already been harvested by SEI. However despite the repeated request of Plaintiffs, no response has been given to the scope and content of the original Stanford database that representatives of SEI testified existed in the state class certification hearing.

Insurers have made no attempt to provide the documents which provide the basis for any coverage defenses that they may be asserting.

**Defendants' Position**:   The SEI Defendants are prepared to make and serve the initial disclosures contemplated by Rule 26(a)(1).  Although Rule 26(a)(1) requires the disclosure of individuals likely to have discoverable information that "the disclosing party may use to support its claims or defenses," and "a description by category and location of all documents" that "the disclosing party has in its possession, custody or control and may use to support its claims or defenses," counsel for Plaintiffs have taken the position that the Rule requires broader disclosure. Despite the plain language of the Rule, Plaintiffs insist that SEI's initial disclosures must include persons and documents that will not be used "to support its claims and defenses," including particular categories of documents and persons that Plaintiffs want SEI to disclose.  Plaintiffs' position ignores the plain requirements of Rule 26(a)(1)(A)(i) and (ii), and confuses the information to be provided through initial disclosures with the requirements for responding to interrogatories and document requests pursuant to Rules 33 and 34.

The SEI Defendants have not taken the position that the information sought by Plaintiffs is unavailable to them through discovery at the proper time; instead, SEI has simply said that it is not required to provide the information sought by Plaintiffs through initial disclosures under the Rule.  Indeed, SEI has repeatedly expressed to Counsel for Plaintiffs that part of the goal in exchanging and reviewing draft discovery requests on June 15, 2015 is so that the parties could have the benefit of concrete draft discovery requests to permit counsel to meet and confer before the start of formal discovery to discuss the various requests in order to understand the information sought by the other parties in order to reach agreements on as many issues as possible.  Trying to force the production of information through 26(a)(1) disclosures, however, is not what Rule 26(a)(1) contemplates.

Counsel for Plaintiffs seems to believe that Rule 26 disclosures were required to be made part of this Report. However, neither the Court's Order, nor Rule 26 so states. The Order from the Court requiring the Rule 26(f) conference calls for the submission of this Report but does not require the inclusion of the Rule 26(a)(1) disclosures. Instead, it raises the question of whether any party has objections to making Rule 26(a)(1) disclosures. Moreover, Rule 26(a)(1) does not instruct the parties to file their disclosures publicly with the Court but merely requires a disclosing party to "provide [the initial disclosures] to the other parties." Indeed, Federal Rule of Civil Procedure 5(d)(1) instructs that "disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission." (emphasis added).

Finally, the SEI Defendants asked counsel for Plaintiffs to provide for the exchange of disclosures on June 30, rather than June 16. Counsel for Plaintiffs would not agree to such a two week enlargement. During recent meet and confer sessions with Plaintiffs, Plaintiffs took the position that their allegations extend back to 1998 and that they will seek discovery extending back to that time frame, although the CD purchases at issue occurred many years later. Although the SEI Defendants disagree with Plaintiffs' position, and without prejudice to their position that the relevant time period is much narrower, as a practical matter, Plaintiffs' position on the relevant time period requires additional time for the SEI Defendants to identify persons who it may use to support its defenses going back to that time period. Given the procedural history of this matter, an additional two weeks—during which time the SEI Defendants will be reviewing Plaintiffs' draft discovery requests and would be willing to meet and discuss those requests— would not be prejudicial to the Plaintiffs.

C.    *Computation of Damages.    Rule 26(a)(1)(A)(iii)- a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based.*

**Plaintiffs' Position**:

The amount of loss of each class member is exclusively in the possession of SEI. The amount of loss of each class representative is set forth on **Exhibit 3(A)** and **Exhibit 3(B)** to Plaintiffs' Initial Disclosures. This information is obtained from the Notice of Determination of the Receiver pursuant to the plan adopted by this Court. Substantial time and expenses have been spent by the Receiver, Ralph Janvey, in determining the amount of loss of each class member based upon the claim procedures adopted by this Court on May 4, 2012.[9] The determination of total damages of the class is very easy to ascertain because SEI has previously provided this information to the Receiver. SEI should provide a list, as of February 17, 2009, of all account holders at the Stanford Trust and their SIB CD balances. The Plaintiffs can then ask each of these IRA account holders to provide the Notice of Determination made by the Receiver. The issue of damages should not be a contested issue. Further, the determination of the damage amount will allow the insurers to focus on their total exposure in this case.

**Defendants' Position**:

The SEI Defendants disagree that they have an obligation to make a disclosure about Plaintiffs' damages as Rule 26(a)(1)(A)(iii) only requires disclosure of "damages claimed by the disclosing party." The SEI Defendants also disagree that damages are easy to ascertain because, among other reasons, the Louisiana Securities Law only provides for actual damages. Thus, if

---

[9] *See* Order dated May 4, 2012 in *SEC v. SIB, et. al.*, Case No. 3:09-cv-0298, Doc. ID 1584, United States District Court in the Northern District of Texas, Dallas Division.

Plaintiffs received payments relating to their SIB CDs that offset some of the value of the SIB CDs, they are not entitled to recover from the SEI Defendants the full amount that they paid for the SIB CDs. For example, these payments could take the form of periodic interest payments received over the life of the SIB CDs, profits earned from the redemption of SIB CDs, payments from the Receiver and/or payments received from other litigation relating to the SIB CDs in which the Plaintiffs are named parties and/or members of a putative class or any class that may be certified. Moreover, the extent of any claim or recovery could be affected by the Court's ruling on the pending motion to dismiss and/or further motions practice. Calculating Plaintiffs' actual damages under these circumstances will involve individualized, time-consuming discovery and evidence.

     **D.**    ***Rule 26(a)(1)(A)(iv). any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.***

**Plaintiffs' Position**: SEI provided Plaintiffs some copies of the policies in the Louisiana Class Action Litigation. Plaintiffs are unsure as to whether all of the policies which SEI has provided broadly include all policies that "may be liable to satisfy all or part of a possible judgment made claims have in fact been provided." Since the Insurers have become parties in the litigation, they have not been required to respond to any discovery requests.

SEI should list all coverage which it **now** believes may provide coverage for the claims of Plaintiffs. It is an important issue in this litigation. While certain policies were provided in the state litigation, no list of the complete coverages which may provide coverage for the claims has been provided in accordance with this rule. There is little doubt that SEI has internally made a complete review of the information needed to respond to this question. No certification has been made by SEI or the insurer defendants that copies of all policies have been provided which

**may** cover the claims made herein.  Given the importance of this issue, it is important that it be dealt with in a formal manner by written response.

**Defendants' Position:**    The SEI Defendants have previously provided Plaintiffs with documents relating to insurance including, but not limited to the E&O policies, which are the policies applicable to this claim, thus producing "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."  Rule 26(a)(1)A)(iv); *see generally* SEI00015052-SEI00015984.  Indeed, the carriers would not be named as Defendants in this matter, as they are, had SEI not provided Plaintiffs with the applicable insurance agreements.

[signature blocks of counsel on following pages]

Respectfully submitted by:

/s/ *Phillip W. Preis*                      /s/ *Kristen A. Laster*

Phillip W. Preis                               Kristen A. Laster


PREIS GORDON, APLC

Phillip W. Preis (La. Bar Roll No. 10706)

Post Office Box 2786 (70821-2786)

450 Laurel Street, Suite 2150 (70801-1817)

Baton Rouge, Louisiana

Phone:  (225) 387-0707

Fax:  (225) 344-0510

Email: phil@preislaw.com


Attorney for Plaintiffs


MORGAN, LEWIS & BOCKIUS LLP

Kristen A. Laster (TX Bar No. 24076499)

1717 Main Street

Suite 3200

Dallas, TX  75201-7347

Telephone:  +1.214.466.4000

Facsimile:  +1.214.466.4001

klaster@morganlewis.com


J. Gordon Cooney, Jr. (*admitted pro hac vice*)

(PA Bar No. 42636)

Elizabeth Hoop Fay (*admitted pro hac vice*)

(PA Bar No. 32955)

1701 Market Street

Philadelphia, PA 19103-2921

Telephone:  +1.215.963.5000

Facsimile: +1. 215.963.5001

jgcooney@morganlewis.com

efay@morganlewis.com


Attorneys for Defendants SEI Investments
Company and SEI Private Trust Company

/s/ Robert E. Torian

Robert E. Torian, 18468

NEUNERPATE
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Telephone: 337.237.7000
Facsimile: 337.233.9450
rtorian@NeunerPate.com

Attorneys for Defendant Continental Casualty
Company

/s/ David W. Crowe

David W. Crowe
John W. Arnold

BAILEY CROWE KUGLER
& ARNOLD, LLP
901 Main Street, Suite 6550
Dallas, TX 75202
Telephone: 214.231.0555
Facsimile: 214.231.0556
dcrowe@bcklaw.com
jarnold@bcklaw.com

Attorneys for Defendants Arch Insurance
Company and Indian Harbor Insurance
Company

/s/ Judy Y. Barrasso

Judy Y. Barrasso, LA #2814

BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER LLC
909 Poydras Street, 24th Floor

/s/ Stefan Dandelles

Stefan Dandelles

KAUFMAN DOLOWICH VOLUCK
55 E. Monroe Street, Suite 2950
Chicago, IL 60603
Telephone: 312.646.6745
Facsimile: 312.896.9403
sdandelles@kdvlaw.com

Attorneys for Defendants Certain Underwriters
at Lloyd's, London Subscribing to Policy Nos.
FD0805144, FD0805145, FD0805146 and
FD080514

/s/ Seth A. Schmeeckle

Seth A. Schmeeckle, LA #27076
Daniel B. Centner, LA #24441

LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504.568.1990
Facsimile: 504.310.9195
sschmeeckle@lawla.com
dcentner@lawla.com

Attorneys for Defendant Nutmeg Insurance
Company

Joint 26(f) Report                    26

New Orleans, LA  70112
Telephone: 504.589.9700
Facsimile: 504.589.9920
jbarrasso@barrassousdin.com

Attorneys for Defendant Allied World
Assurance Company (U.S.) Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2015, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following ECF participants or by such other means as authorized by the Court and the Federal

Rules of Civil Procedure.

s/Phillip W. Preis
Phillip W. Preis

## **Appendix A**
## ***Rule 26(a)(1)(A)(i)-***

***Name of Potential Witnesses.   Rule 26(a)(1)(A)(i)-The name, if known, the address and telephone number of each individual likely to have discoverable information-along with the subjects of that information, that the disclosing party may use to support its claims or defenses.***

SEI should make Initial disclosures under Rule 26 as to the witnesses and documents in its possession as to the following key factual issues:

1. **Relationship between Stanford and SEI**. This was a cradle-to-grave relationship from formation of the Trust in 1998 to February 17, 2009. It is Plaintiffs' position that SEI was the *de facto* trust company who was custodian for the SIB CDs because of the role played by SEI in operating Stanford Trust.

2. **Knowledge of Sale of SIB CDs to Retirees**. The role of SIB in the sale of the SIB CDs is highly disputed. Plaintiffs contend that SEI knew that the SIB CDs were being marketed to unsophisticated retirees because SEI set up each of their accounts on the computer system.

3. **Role of SEI and SEI Trust**. SEI was intimately involved in all cash transfers from SIB to the account holders. SEI understood the role it was playing because both Bear Stearns and Pershing refused to allow the SIB CDs to be reported on the statements that were generated on behalf of Stanford.

4. **Other Financial relationships or proposed relationships between Stanford affiliates and SEI and its affiliates**. These "other relationships" provide the motive for the "don't ask don't tell" relationship that existed between Allen Stanford and SEI, and why SEI never insisted, nor even questioned, Stanford answering certain questions about SIB and its assets.

5. **Money Laundering Compliance under the Patriot Act**. SEI was the recipient of foreign income from SIB. The Patriot Act requires certain monitoring of these transactions as well as SEI having a duty to have AML guidelines in place. Part of this duty was knowing what foreign assets produced the income being paid to SEI. It is Plaintiffs' position that SEI failed to exercise duties imposed by the Patriot Act, and if SEI had performed these duties, SEI would have learned of the nature of the Ponzi scheme.

6. **Persons with Knowledge of the various components of the Stanford Relationship**

7. **Performance of Due Diligence**. The extent the Stanford Relationship was considered by any executive committee or board of directors, and what internal guidelines exist for performing due diligence on new customers of SEI is a critical issue in the case.

8. **Internal Review**. Any review by internal auditors or special committees formed by SEI between 1992 and today to review Stanford and the failure of SIB. It is expected that SEI will assert attorney client privilege on this review process. This issue should be addressed immediately by the Court.

9. **Document Custodians**. Names of persons who may have Stanford documents in their possession and the names of persons who are responsible for harvesting all Stanford documents within the SEI organization.

# Appendix B
## *Rule 26(a)(1)(A)(ii)*

**Category of Production of Documents.** *Rule 26(a)(1)(A)(ii)-A copy—or a description by category and location—of all documents, electronically store information, and tangible things, that the disclosing party has in its possession, custody or control and may use to support its claims or defenses.*

Plaintiffs desire to know the location and format (electronic or paper copy) of the following categories of documents. This information has not been disclosed by SEI to Plaintiffs as of the date of the filing of this report.

**SEI's Existing Stanford Database**

Soon after the failure of Stanford in February 2009, SEI harvested a database of documents and electronic documents relating to Stanford (the "Existing Stanford Database"). This information was established through the testimony of SEI's corporate representatives at the state class action proceeding. The scope and content of the Existing Stanford Database and any indices of that database have not been disclosed to Plaintiffs. The Court should initially require a document representative of SEI to certify as to the search employed to harvest the documents of the Existing Stanford Database as well as the contents of the database. The content of the Existing Stanford Database are very important because it significantly offsets SEI's argument that it will incur significant expenses to comply with the discovery orders.

SEI should describe the scope of the Existing Stanford Database and identify what criteria was used to create the database, what documents are excluded from the database, and what persons were contacted to provide documents for the database. To the extent the Existing Stanford Database does not comprehensively include the categories set forth below, SEI should be required to disclose the location of these documents, and the names of the persons that would be responsible for producing their contents. Further, the production of an index of the Existing

Stanford Database would clearly assist the efficiency of the document production process. It is Plaintiffs' understanding that both "hard copy" and electronic documents are included.

**Documents Other Than the Existing Stanford Database.**

In addition to the documents in the Existing Stanford Database, the search criteria for other documents ("Newly Located Documents") not included in the Existing Stanford Database need to be developed.   SEI has suggested that electronic search terms be formulated for all electronic documents. It is SEI's position that it has the right to review all non-account statements relating to Stanford in the Existing Stanford Database. As for the electronic documents that have not been harvested by SEI in the Existing Stanford Database, Plaintiffs submit the following should occur:

(i)      SEI should provide the names of persons having knowledge of Stanford;

(ii)      SEI should provide the various types of computer formats (.pdf, .tiff, .seq, etc.) describing how the documents listed below are identified;

(iii)      SEI should provide a complete listing of the documents that are identified by each category as set forth below and properly identify the search criteria used to harvest the "hits" in the electronic search.

**Categories of Documents**

For each of the following categories of files in the Existing Stanford Database and Newly Located Documents, SEI should provide the (i) file location and format; (ii) identity of person or persons with personal knowledge of their existence or content; and (iii) whether the documents are in the initial data base.

1.    **Account Statements**.

This is the largest category of information.[10] The relevant documents are only the approximately 1,100 clients who had IRAs that owned the SIB CDs at the closing date in February 17, 2009.  This information is readily available because it is kept in SEI's normal course of business and it has been provided to the Receiver to make its "Notice of Determination" on each Plaintiff's Proof of Claim.

(i)    A determination of the names of the 1,100 account holders as of the closing date of February 17, 2009 substantially narrows the search of the information and provides a key determination of the amount of damages. The removal of the remaining account statement documents from consideration in this case substantially narrows the scope of the relevant documents.

(ii)    The providing of this information readily identifies the class members by name and establishes the amount of the loss.

2.    **Transactions in Money Market Funds of SEI**. All of the disbursements of foreign income from SEI that may have been made through SEI money market accounts.

This information is highly relevant to (i) the role SEI played in enabling the Ponzi scheme; and (ii) its compliance with its own AML policy and U.S. anti-money laundering laws.

3.    **Contracts**.  All contracts between SEI and Stanford.

4.    **Due Diligence Files**. Any files that contain documents as to SEI's understanding of Stanford, SIB or his operations from the date of the inception of the relationship to February 17, 2009.

---

[10] SEI should represent to the Court one way or another if it knows the persons who lost money as of February 16, 2009. This one determination reduces the volume of the documents.

5.    **All Documents Evidencing the Services Provided by SEI to Stanford**.

6.    **All Documents Relating to the Other Financial Relationships Between SEI and Stanford**.   The actual financial relationships as well as financial relationships that were being solicited by SEI provides the motive for SEI turning a blind eye to the value of the SIB CDs. It is known that SEI provided mutual funds to Stanford. In addition, SEI attempted to provide services for major pension funds. The documents relating to these other financial relationships and *potential* relationships should be disclosed.

7.    **Emails Between SEI and Stanford**. All of these files are PST files and have been harvested from the server. The scope of the number of files can be substantially reduced by identifying the names and email addresses of persons that provided routine account services of each of the clients.

8.    **Emails between SEI and any Customer of Stanford**.

9.    **Wire Transfers Initiated to any Customer of Stanford or Record of any Funds Received by SEI from any Customer of Stanford**.

10.    **Account Agreement of any Customer of Stanford with SEI or Stanford in the Possession of SEI**

11.    **Board Minutes or Executive Committee Minutes**. Any board minutes or executive committee minutes relating to Stanford.

12.    **Internal Reviews, Internal Audit reports or Investigations relating to Stanford**. Plaintiffs believe that it is likely that internal investigations and internal audits were conducted by SEI that clearly establish its relationship with Stanford. The existence and location of these documents is relevant to this case.

13.   **Due Diligence Requirements relating to AML Policies**. Production of the AML policies of SEI, and what audits and procedures were followed to ensure that Stanford Trust, SIB, and Stanford affiliates were in compliance with the AML procedures.

14.   **Documents Other than Category 1-13 Documents**.

15.   **Personal Files of Document Custodian**.   SEI is required to designate the individual or individuals that have personal knowledge of the Stanford relationship, including any officer or member of the board of directors, and what review procedures will be used to determine the existence of actual or electronic documents.

16.   **Policies and Procedures of SEI or SEI Trust for Establishment of New Client Relationships and Understanding of the Operation of the Client and Annual Review of Client Operations**.