IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY LILLIE, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | Civil Action No. 3:13-CV-3127-N |
| § | | |
| STANFORD TRUST COMPANY, *et al.*, § | | |
| § | | |
| Defendants. § | | |

### **ORDER**

This Order addresses Defendants SEI Investments Company ("SEI Investments") and SEI Private Trust Company's ("SEI Private Trust") (collectively, "SEI") amended motion to dismiss [134]. Because Plaintiffs adequately plead their claims, the Court denies the motion.[1]

### **I. THE ORIGIN OF THE MOTION**

This action arises out of the Ponzi Scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Committee*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great detail here. Basically, Stanford's scheme involved the sale of fraudulent certificates of deposit ("CDs") through an offshore bank based in Antigua known as Stanford International Bank Limited ("SIB"). Although Stanford represented that the CD proceeds

---

[1]The Court also denies Plaintiffs' motion for leave to file a sur-reply [158].

were placed in low-risk, high-return investments, in reality they were funneled into speculative investments and used to fund Allen Stanford's extravagant lifestyle.

This action centers around the Stanford Trust Company ("STC"), one of Stanford's entities located in Baton Rouge, Louisiana. Plaintiffs were IRA account holders whose accounts were serviced by STC. STC in turn acquired and held fraudulent SIB CDs in Plaintiffs' IRA accounts. According to Plaintiffs, STC contracted with Defendant SEI to provide monthly and quarterly reports to STC's clients. SEI also allegedly "provided full support for the trust operations of" STC "and "regularly reported to the Plaintiffs on the fair market value of the SIB CDs held in their IRA accounts . . . ." First Am. Pet. ¶ 9 [81]. Plaintiffs allege these reports were false and assisted the perpetuation of Stanford's scheme. *Id.* ¶ 10.

Plaintiffs also allege that SEI provided a great deal of logistical support to STC when STC began managing trust accounts. *Id.* ¶ 29. SEI provided, for instance, "the expertise to initially set up the IRA accounts, . . . the accounting, and . . . [the] monthly accounting of the values." *Id.* Indeed, according to Plaintiffs, SEI "was the *de facto* trust company and enabled [STC] to effect the offering of SIB CDs to Plaintiffs without complying with the registration laws or properly valuing the SIB CDs." *Id.* In sum, Plaintiffs contend that SEI both assisted STC in its own internal operations, and provided investors such as the Plaintiffs with the value of the assets in their trust accounts.

Based on these general allegations, Plaintiffs bring claims against SEI for both primary and secondary liability under the Louisiana Securities Law, LA. REV. STAT. ANN.

§§ 51:701–51:724 ("LSL"). Specifically, Plaintiffs allege violations of sections 51:714(A), 51:714(B), and 51:712(D). SEI now moves to dismiss, arguing that Plaintiffs fail to sufficiently plead their claims.

## II. THE RULE 12(b)(6) LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. THE COURT DENIES SEI'S MOTION TO DISMISS

SEI challenges each of Plaintiffs' LSL claims. The Court addresses each in turn.

### *A. Plaintiffs Sufficiently Allege the SIB CDs Constituted "Securities"*

In order to impose liability under the LSL, the alleged conduct must involve "securities," as that term is defined in the statute. *See* LA. REV. STAT. ANN. § 51:712(A) (proscribing conduct associated with the offer or sale of *any security*). SEI contends that the face of the First Amended Petition establishes that the SIB CDs were not "securities."

The LSL includes within its definition of "security" any certificate of deposit. *Id.* § 51:701(15)(a). However, the same section also excludes from the definition of security "[c]urrency, or any note, draft, bill of exchange, loan participation or banker's acceptance, or *any other evidence of indebtedness issued by a bank* . . . ." *Id.* § 51:712(15)(b) (emphasis added). Based on this exclusion, SEI argues that the SIB CDs, which were issued by what was nominally a bank, are not securities under the LSL.

Unfortunately, the LSL does not explicitly define "bank." Plaintiffs suggest the definition found in Title 6 of the Louisiana Revised Statutes – which governs banks and banking, not securities transactions – is the appropriate one. That Title defines bank as "any state bank or any national bank." *Id.* § 6:2(1). In turn, a "state bank" is defined as "any corporation organized under the provisions of [the Louisiana banking laws]," *id.* § 6:2(14), while "national bank" is defined as "any corporation organized under the provisions of the National Banking Act (12 U.S.C. 1 et seq.)," *id.* § 6:2(11). According to Plaintiffs, SIB would not constitute a bank under this definition.

However, SEI takes issue with the definition of bank found in Louisiana's banking laws, arguing it is irrelevant to the term as it is used under the LSL. *See* Reply Br. 9 n.7

[152-1]. While SEI may be correct, the Court is confident that the LSL intends some technical definition of "bank." In other words, it can not be sufficient to qualify as a bank under the LSL that an entity called itself a bank or had the term "bank" in its name. SEI has not suggested a more appealing definition of the term. For that reason, the Court concludes SEI has failed to carry its burden in establishing that the SIB CDs did not constitute "securities" under the LSL.[2]

### B. Plaintiffs Allege Sufficient Facts to Support Claims for Primary Liability

The LSL distinguishes between primary and secondary violations of the statute. Section 51:714(A) provides liability for parties that actually engage in the sale of the allegedly fraudulent security, *see* LA. REV. STAT. ANN. § 51:714(A), while section 51:714(B) provides secondary liability for control persons, *see id.* § 51:714(B). Section 714(A) provides a cause of action for violations of section 712(A), which itself makes it unlawful to "offer to sell or to sell" an unlawful security. *Id.* § 712(A). Based on this language, SEI argues Plaintiffs have failed to allege it offered for sale or sold any security.

Plaintiffs allege that the "substantial factor" test governs primary liability under the LSL. Thus, according to Plaintiffs, rendering substantial assistance to the actual offeror or seller of the security, with knowledge of the offeror or seller's misrepresentations, is

---

[2]SEI also argues Plaintiffs should be estopped from arguing SIB was not a bank because they referred to SIB as a bank in their First Amended Petition. *See* Reply Br. 9 (citing First Am. Pet. ¶¶ 3(A), 3(D)). The Court disagrees. Plaintiffs' reference to SIB as a bank was not an attempt to legally label SIB. SIB called itself a bank, and Plaintiffs' use of that term was not legally operative.

sufficient for primary liability under the LSL.[3]  *See* Mem. Opp. Am. Mot. Dismiss 18–20 [151].  Although Plaintiffs do not provide any relevant authority establishing that the "substantial factor" test applies to the LSL, the Court nevertheless concludes SEI has failed to carry its burden in establishing that Louisiana law does not recognize the test.

In *Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So. 3d 1269 (La. Ct. App. 2009), a Louisiana appellate court considered an argument that an accounting firm could be held liable as a primary violator under the LSL under the "substantial factor" test. *Id.* at 1280. The court noted that the test was derived from *Pharo v. Smith*, 621 F.2d 656 (5th Cir. 1980), which applied the test in an action based on the federal securities laws. *Id*.  Although the *Solow* court questioned whether the test was properly applied to the LSL, the court nevertheless applied the test to the facts of the case. *Id.* at 1280–81. *Solow* indicates that at the least, it is unsettled whether the substantial factor test can be applied to the LSL.  Thus, without further authority, the Court is unprepared to conclude that the "substantial factor" test is inappropriate under the LSL's primary liability provisions.  The Court accordingly declines to dismiss Plaintiffs' claims based on section 714(A).

### C. Plaintiffs Allege Sufficient Facts to Support Claims for Secondary Liability

Section 714(B) governs secondary liability under the LSL.  It provides:

---

[3]Plaintiffs rely extensively on this Court's Order, Nov. 14, 2012 [21], *in Kneese v. Pershing, L.L.C.*, Civil Action No. 3:10-CV-1908-N (N.D. Tex. filed Sept. 23, 2010).  This citation is misguided for two significant reasons.  First, the *Kneese* Order considered claims for violations of the Texas Securities Act, not the LSL. *Id.* at 4.  Second, the *Kneese* Order's consideration of "substantial assistance" pertained to claims for secondary "aider" liability under the Texas Securities Act, *id.* at 8, not primary liability as Plaintiffs attempt to assert here.

> Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is jointly and severally liable with and to the same extent as the person liable under Subsection A of this Section . . . .

LA. REV. STAT. ANN. § 714(B). The LSL defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.* § 702(4). Based on these definitions, SEI argues Plaintiffs have failed to allege control.

Although Plaintiffs do not explicitly contend STC was controlled by SEI, they allege sufficient facts, taken in Plaintiffs' favor, for this Court to conclude dismissal is inappropriate. For instance, Plaintiffs allege "[b]y providing essentially all of [STC's] operation skills to [STC], SEI was the *de facto* trust company and enabled [STC] to effect the offering of SIB CDs to Plaintiffs without complying with the registration laws or properly valuing the SIB CDs." First Am. Compl. ¶ 29. Plaintiffs thus allege that SEI had a substantial amount of influence on how STC was operated. The extent to which this statement is accurate is not a question the Court may consider on a motion to dismiss under Rule 12(b)(6). *Cf. In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) (holding that whether defendant was a control person under the federal Securities Exchange Act of 1934 was a question of fact inappropriate for resolution on a motion to dismiss). Accordingly, the Court denies SEI's motion to dismiss Plaintiffs' claims for secondary liability under the LSL.

### *D. Plaintiffs Adequately State Their Claims Against SEI Investments*

Defendants move for dismissal of all claims against SEI Investments, arguing Plaintiffs did not plead any facts implicating SEI Investments. To the contrary, Plaintiffs pled each of their claims against both SEI Investments and SEI Private Trust Company. *See* First Am. Compl. ¶¶ 3(C), 29–54 (defining "SEI" to include both SEI Investments and SEI Private Trust, and pleading claims generally against SEI). The Court does not at this stage attempt to unravel what entity was responsible for what conduct. Plaintiffs' allegations on their face implicate both entities, and the Court thus declines to dismiss claims against SEI Investments.

### *E. The Court Does Not Consider Arguments for Dismissal of Plaintiffs' Section 712(D) Claims*

Defendants raise for the first time in their reply brief arguments for dismissal of Plaintiffs' claims under Section 712(D). *See* Defs.' Reply 10 [152-1]. This Court typically does not consider novel arguments raised for the first time in a reply brief.[4] *See, e.g.*, *Smith v. Xerox Corp.*, 584 F. Supp. 2d 905, 915 n.18 (N.D. Tex. 2008). Thus, the Court declines to consider SEI's novel argument for dismissal of claims under section 712(D). The Court also denies Plaintiffs' motion for leave to file a sur-reply [158].

### CONCLUSION

For the foregoing reasons, the Court denies SEI's motion to dismiss in its entirety.

---

[4] SEI argues it was forced to raise the argument for the first time in its reply brief because Plaintiffs indicated for the first time in their response brief that they asserted claims under section 712(D). That is incorrect, however, as Plaintiffs' first amended complaint references violations of section 712(D). *See* First Am. Compl. ¶ 115.

Signed June 17, 2015.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10