IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TROY LILLIE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-03127-N |
| | § | |
| STANFORD TRUST COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# **ORDER**

This Order addresses Defendants SEI Investments Company ("SEI Investments") and SEI Private Trust Company's ("SEI Trust") (collectively, "SEI") renewed motion that the Court decline to accept the state court's order regarding class certification [182]. The Court denies SEI's motion and adopts as an order of this Court the state court's order certifying a plaintiff class. The Court amends the state court order and certifies a class under Rule 23 as detailed below.

### I. THE DISPUTE BETWEEN PLAINTIFFS AND SEI

Plaintiffs sued SEI and others in Louisiana state court, alleging that SEI violated the Louisiana Securities Law (the "LSL"). *See* LA. REV. STAT. §§ 51:701–724. Specifically, Plaintiffs alleged that SEI violated LSL sections 714(A), 714(B), and 712(D). These allegations arose from SEI's involvement with entities that dealt in financial products from Stanford International Bank Limited ("SIBL"). SIBL marketed certificates of deposit ("CDs") to investors as safe investments with above-market returns. In fact, SIBL CDs were

ORDER – PAGE 1

a tool by which R. Allen Stanford generated funds to carry out his well-known Ponzi scheme. The facts of Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great depth here. Stanford's scheme defrauded thousands of investors, who collectively lost billions of dollars. In February 2009, Ralph S. Janvey was appointed as Receiver for the Stanford entities and tasked with, among other things, making Stanford's investors whole to the greatest extent possible. Along with the Receiver's efforts, investors have brought variety of suits against those alleged to have helped Stanford carry out his scheme. This is one such suit. Plaintiffs are a Louisiana-based group of SIBL CD holders who lost their investments. SEI provided administrative services to Stanford Trust Company ("Stanford Trust"). Stanford Trust acted as custodian and trustee for some investors' (including Plaintiffs') Individual Retirement Accounts ("IRAs") holding SIBL CDs. Stanford Trust was one of many entities that Allen Stanford used to carry out his fraud.

Plaintiffs sought class certification in state court under Louisiana procedural rules. In January 2013, the state court certified a class composed of all those who purchased SIBL CDs in Louisiana between January 1, 2007, and February 13, 2009; all who renewed a SIBL CD in Louisiana during that time period; or "any person for whom [t]he Stanford Trust Company purchased SIB[L] CDs in Louisiana" during that time period. State Court Am. J., App. Supp. Defs.' Mot. 373 [184]. SEI appealed the class certification decision. While the appeal was pending, Plaintiffs filed an amended petition, using Louisiana's direct action statute to join several insurance companies that insured SEI. In March 2013, with SEI's

appeal of the state court's class certification still pending in the state appellate court, the SEI insurers invoked the removal provision of the Class Action Fairness Act ("CAFA") to remove the case to the U.S. District Court for the Middle District of Louisiana. The Judicial Panel on Multidistrict Litigation then transferred the case to this Court.

This Court subsequently dismissed Plaintiffs' claim against SEI for violation of section 714(A) of the LSL. The Court also granted SEI's motion for partial judgment on the pleadings on Plaintiffs' claim under section 712(D). Plaintiffs' remaining claim is that SEI violated section 714(B) of the LSL. SEI now asks this Court to decline to adopt the state court's class certification order and to decertify the class. In the alternative, SEI asks the Court to enter its own order on class certification so as to facilitate an interlocutory appeal. Plaintiffs argue that it would be improper for this Court to reconsider the state court's class certification decision – a decision they argue is correct under federal standards in any event.

## II.  RECONSIDERATION OF THE CLASS CERTIFICATION ORDER IS PROPER

This Court has authority to decide whether class certification is appropriate under the Federal Rules of Civil Procedure, regardless of the state court's previous determination. Neither CAFA nor the federal removal scheme in general, 28 U.S.C. §§ 1441–1455, bind federal courts to a state court's previous interlocutory decisions. *See* 28 U.S.C. § 1450. Instead, the statute recognizes "the district court's authority to dissolve or modify . . . orders[] and all other proceedings had in the state court prior to removal." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 437 (1974). Accordingly, the Court treats the state court's pre-removal interlocutory orders as it would its own interlocutory orders.

*Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) (state court's pre-removal interlocutory orders are "transformed . . . into orders of the federal district court" to preserve status quo in litigation).

The fact that the state class certification order was pending appeal at the time of removal does not preclude the Court from reconsidering the state court's class certification decision. While the case law on this question is limited by the relative rarity of appellate-stage removal, the Fifth Circuit has held that when a case is removed with a state appeal pending, the case remains in the same condition in which it left state court: the federal district court must "take the state court judgment as it finds it, prepare the record as required for an appeal, and forward the case to a federal appellate court for review." *In re Meyerland*, 960 F.2d 512, 520 (5th Cir. 1992) (en banc) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Etc.*, 415 U.S. 423, 435–36 (1974)), *cert denied* 506 U.S. 1049 (1993).

Notably, however, *Meyerland* involved the broadly-written removal language in the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1819(b)(2)(C), and the Fifth Circuit limited its holding to removal under that statute. *Id.* at 515 n.5. Additionally, *Meyerland* dealt with removal where a final judgment, rather than an interlocutory order, was pending appeal. *Id.* at 514. The "rubber stamp" approach adopted by the *Meyerland* court for a final judgment is an ill-fitting approach for situations where the work of the trial court is not yet done. *Cf. id.* at 524–26 (Politz, C.J., dissenting).

A federal appeals court cannot review the state court's interlocutory orders until the order is adopted or rejected by the federal district court. *See Adams v. Georgia Gulf Corp.*,

2000 WL 34507966, at *1–2 (5th Cir. 2000) (unpublished) (citing *Meyerland*, 960 F.2d at 520); *see also Concordia Partners, LLC v. Pick*, 790 F.3d 277, 279 (1st Cir. 2015) (citing *Adams* and noting that 28 U.S.C. § 1450 exists to preserve the status quo in a removed case, but for purposes of federal appellate jurisdiction it does not "automatically render[] . . . state court orders federal district court orders that may be the proper subject of a federal appeal"). Without action by this Court, there is no avenue for interlocutory appellate review of the state court's class certification decision. The Court concludes that it must address class certification under the federal rules before creating a federally-appealable order. *Cf. Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1316 (5th Cir. 1992) (noting that

> [f]ederal procedure governs the enforcement of a prior state court order in a case removed to federal court. Thus, where the prior state court order is a summary judgment, the federal court must ensure that the order is consistent with the requirements of Rule 56(c) of the Federal Rules of Civil Procedure. . . . If the federal court declines to reconsider the state court summary judgment, then the federal court certifies that the order is indeed consistent with Rule 56(c)."

(citations omitted)).

It is appropriate to reconsider and amend the state court's class certification order in this case. A decision on class certification is an interlocutory order that the Court may modify when appropriate. FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). After an initial certification decision, federal courts have an ongoing obligation to ensure that proceeding on a class basis remains justified, and courts will decertify an existing class when the class

fails to meet Rule 23's requirements. *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983). Determining whether continued class proceedings are proper under Rule 23 is especially important where, as here, a state court used state procedural rules to certify the initial class before removal to federal court. Accordingly, the Court proceeds to determine the propriety and scope of class certification under the Federal Rules in this case.

### III. CLASS CERTIFICATION UNDER RULE 23

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). Class certification is allowed only if Plaintiffs satisfy the four elements of Rule 23(a) and at least one element of Rule 23(b). *See Serna v. Transp. Workers Union of Am., AFL-CIO*, 2014 WL 7721824, at *2 (N.D. Tex. 2014) (Godbey, J.). The U.S. Supreme Court instructs that courts conduct a "rigorous analysis" of Rule 23's requirements, only certifying a class when there is "[a]ctual, not presumed, conformance" with Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011).

Under Rule 23(a), the party seeking class certification must show: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Feder v. Elec. Data Sys. Corp.*, 428 F.3d 125, 129 (5th Cir. 2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).

Rule 23(b)(3) – the relevant provision in this case – requires "both (1) that questions common to the class members predominate over questions affecting only individual class members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003).

### IV. THE COURT CERTIFIES A CLASS UNDER RULE 23

The class certified by the state court satisfies the requirements of Rule 23(a). Rule 23(a)'s requirements are substantially similar to the requirements of Louisiana's class certification procedure. *See* LA. CODE CIV. P. art. 591. The state court found those requirements satisfied. Based on the state court record, the class also satisfies Rule 23(a).

#### A. Rule 23(a)

***1. The Class Is Sufficiently Numerous.*** – A class satisfies the numerosity requirement when "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This requirement does not impose a specific numerical threshold; instead, courts considering whether joinder is impracticable analyze factors like class size, the ease of identifying and serving class members, class members' geographic dispersion, and any difficulty in joining all of them as class members. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) (affirming denial of class certification where class of only 38 members was easily-identifiable and located in "a compact geographical area"). A party seeking class certification can show impracticability with "some evidence," or a "reasonable estimate," of the number of class members. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001).

Joinder of all class members as plaintiffs is impracticable in this case. When issuing its oral reasons for class certification, the state court noted that

> Plaintiffs offered evidence showing the existence of over 1,000 accounts holding SIB[L] CD's through Stanford Trust. There are 86 named plaintiffs. SEI . . . would appear to have better access to the number of persons who owned those accounts. Absent evidence from [SEI] that those 1,000 accounts were held by some substantially smaller number of people, the Court finds that Plaintiffs have shown that the class is so numerous that joinder of all members is impractical."

Oral Reasons for Class Certification ("Oral Reasons"), App. Sup. Defs.' Mot. 365.

SEI's motion did not challenge this conclusion. Although the exact number of class members in the class defined in this order is not known at this time, it will be easily ascertainable before final judgment. *See Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). Regardless whether it is the 86 Louisiana-based named plaintiffs alone or the 1,000-plus Stanford Trust account holders, the Court concludes that the class members are sufficiently numerous so as to render joinder impracticable.

***2. Common Questions of Law and Fact Exist.*** – The second prerequisite for class certification is that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Satisfaction of Rule 23(a)'s commonality requirement is a precondition for finding satisfaction of Rule 23(b)(3)'s predominance requirement. As discussed in Section IV.B.1 below, Plaintiffs have met the predominance requirement. Because Plaintiffs clear the higher bar of proving that common questions predominate over individual ones, they have necessarily cleared the lower bar of proving that common questions merely exist.

***3. The Representatives' Claims Are Typical of All Class Members' Claims.*** – Rule 23(a)'s third provision requires that "the claims . . . of the representative parties are typical of the claims" of all class members. FED. R. CIV. P. 23(a)(3). A representative's claim is typical if it arises out of the same event, course of conduct, or legal theory as the claims of the other proposed class members. *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 530 (E.D. Tex. 2003), *aff'd*, 100 Fed. App'x. 296 (5th Cir. 2004).

The representative plaintiffs' claims in this case are typical of the claims of the remaining class members because they are based on the same course of conduct (class members' purchase and renewal of SIBL CDs through Stanford Trust IRAs) and the same legal theory (that SEI's conduct related to the Stanford Trust's sale of SIBL CDs violated the LSL). *See* Oral Reasons 366. This was the state court's conclusion, and SEI did not challenge it in their motion. Thus, the Court adopts the state court's finding and concludes that Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

***4. The Class Representatives Will Protect the Interests of the Class.*** – Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Representatives fairly and adequately protect class interests when (1) the attorney representing the class is competent and zealous, (2) the class representatives are willing and able to take an active role in controlling the litigation and protecting the interests of absent class members, and (3) the representatives' interests do not conflict with the interests of the class. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

The state court found that (1) counsel was "more than competent to handle and manage this litigation" and that SEI offered no evidence to the contrary; (2) the "representatives who testified at the hearing indicated their willingness to represent the class" and "seemed competent and interested in the outcome of the claims"; and (3) there was no evidence of a conflict of interest, with one representative testifying that they were "all in this together." Oral Reasons 366–67. SEI's motion does not challenge this conclusion. The Court adopts the state court's finding and concludes that Rule 23(a)(4) is satisfied.

### B.  Rule 23(b)

SEI argues that the Court should decertify the class because the class does not meet the requirements of Rule 23(b)(3). They argue that individual questions predominate over common ones and that class proceedings are not superior to alternative adjudication methods. The Court rejects both of these arguments.

***1. Common Questions Predominate Over Individual Questions.*** – To justify class certification in this case, Plaintiffs must prove that common questions predominate over individual questions. FED. R. CIV. P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting W. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4.50 (5th ed.)) (alteration in original) (internal quotation marks and footnotes omitted). In other words, a question is common to the class

when its resolution "will resolve an issue that is central to the validity of each one of the claims in one stroke." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 841 (5th Cir. 2012). Formulation of these questions must not be excessively broad; the questions must be specific enough to facilitate effective appellate review. *Id.* at 842.

"The predominance inquiry 'asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues.'" *Tyson Foods*, 136 S. Ct. at 1045 (citation and quotation marks omitted). Determining whether common questions of law or fact predominate thus begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). While the Court cannot stray into any merits determination at the class certification stage, rigorous analysis of whether Rule 23 is satisfied "will entail some overlap with the merits of the plaintiff's underlying claim. . . . The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart*, 131 S. Ct. at 2252. However, "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 131 S. Ct. 1184, 1195 (2013).

Plaintiffs' underlying cause of action requires proof (1) that a seller sold them securities; (2) by means of a false or misleading statement or omission of a material fact; (3) that the seller knew or should have known was untrue or necessary to avoid a misleading effect; (4) that the plaintiff did not know of the untruth or omission; and (5) that SEI directly

or indirectly controlled the seller. *See* LA. REV. STAT. §§ 51:712(A)(2), 714(A)–(B). These elements boil down to two essential inquiries: (1) was someone primarily liable to Plaintiffs, and, if so, (2) did SEI control the primarily liable party? In this case, common proof can provide the answers.

The first question is whether STC committed a primary violation. The record shows that the evidence necessary to prove the answer to this question is the same for all class members. Based on the state court record, the Court concludes that each class member had the same relationship with STC; thus, proof that STC was a seller under the LSL for one plaintiff will apply for all. Specifically, each member of the class purchased or renewed a SIBL CD through STC. Evidence supporting that contention for each individual will not constitute a substantial portion of the litigation – STC's and SEI's records would show the extent of the relationship for each class member. Additionally, resolution of whether the SIBL CDs were "securities" under the LSL would apply to all class members.

Finally, proof that STC sold the securities by means of misrepresentation or omission to any individual member of the class likewise will suffice for every member of the class. STC's role in the Stanford Ponzi scheme did not change as it relates to individual class members. Thus, if STC is proven to have fraudulently sold the securities to class members by either misrepresenting or omitting a material fact, such as concealing or deceiving investors about the true nature of the purported investments as part of the Stanford Ponzi scheme, that proof will apply equally for each class member. SEI argues that each investor's individual relationship with various Stanford financial advisors renders the misreprentation

or omission inquiry hopelessly individual. However, proof of those individual misrepresentations is unnecessary if Plaintiffs prove that STC, as a seller of securities, breached its duty to state material facts about the CDs: facts such as the true nature of Stanford's financial scheme and the true disposition of investor money. Those alleged omissions are inherent in the scheme and thus common to each investor.

The record also establishes that the evidence necessary to prove whether SEI controlled STC in the class proceeding would be the same evidence that would be used if every investor-plaintiff tried their claims in individual actions. "Control person liability does not require participation in the fraudulent transaction," but participation would surely exceed the minimum requirement that a plaintiff "must at least show that the defendant had an *ability* to control the specific transaction or activity" giving rise to the lawsuit. *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (emphasis added) (internal citations and quotations omitted).

SEI's relationship with STC did not vary by investor. Regardless of the *strength* of the proof that SEI controlled STC – a merits issue that the Court does not reach in the class certification inquiry – the evidence establishing *whether* SEI controlled STC so as to permit secondary liability will not vary by investor. The minimum control threshold of an ability to control a specific transaction does not preclude proof of more systematic control on a class-wide basis. If any individual investor could prove that SEI controlled STC based on the circumstances of their relationship, such as the contract between them and the role that SEI played in STC's operations, then the same evidence would support the same conclusion for every member of the class. The Court thus concludes that the key questions for

establishing SEI's liability are common questions that predominate over any individual issues.

SEI argues that individual issues predominate on the question of damages. The Court disagrees. The losses to Stanford investors have been extensively analyzed by the Receiver and his experts, who have used that information in dozens of cases and the claims distribution process. With this information, proving damages will not turn the trial of common questions into a multitude of individual mini-trials on damages. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

*2. A Class Action Is Superior to Other Methods of Adjudication.* – Rule 23(b)(3) finally requires that a Court determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Superiority is determined with reference to four factors:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)  the likely difficulties in managing a class action.

*Id.*

Because all individuals in the class have the same claims, it is efficient and desirable to adjudicate them in one forum. No other factor counsels so strongly against a class action that any alternative would be superior. SEI argues that (1) Plaintiffs' claims are large enough to justify individual litigation and (2) Plaintiffs are all involved in other litigation against SEI

and other defendants. These arguments are unpersuasive. First, the mere fact that the claims are large enough to justify individual litigation does not negate the benefit of concentrating the litigation. Given the age and financial circumstances of many of the class members, individual actions are not a superior alternative. Second, the Court is not persuaded that the "extent and nature" of the other pending litigation outweighs the desirability of class proceedings. After years of litigation, the Stanford cases remain ongoing. The potential for class recovery here is likely the best opportunity that the absent class members have for vindicating these claims against these defendants. Because the Court is unconvinced that any alternative method of adjudication would be more conducive to the efficient and fair resolution of these claims, Rule 23(b)(3)'s superiority requirement is satisfied.

### C. Class Definition

Based on the claims still pending in this case, the Court certifies a class consisting of those persons in Louisiana for whom Stanford Trust Company purchased or renewed SIBL CDs between January 1, 2007, and February 13, 2009. This class definition is more limited than the class certified by the state court. *See* App. Supp. Defs.' Mot. 373 (judgment of state court certifying, in addition to the class certified here, a class including those persons in Louisiana who purchased or renewed SIBL CDs from any source in the relevant time frame). This limitation is consistent with the claims that the Court has dismissed since the case left state court. *See supra* Section I. The remaining claims against SEI arise from SEI's involvement with STC. The Court has dismissed claims against SEI based on other theories of liability. *See* [174], [198], [199]. The remaining claims do not provide a basis for

including as class members those who obtained SIBL CDs from sources with which SEI had no relationship, e.g. Stanford brokers lacking a relationship with SEI.

### V. CLASS MEMBERS SHALL HAVE NOTICE AND THE OPPORTUNITY TO OPT OUT

Notice to class members and the opportunity to opt out of the class are mandatory rights in a class action certified under Rule 23(b)(3). FED. R. CIV. P. 23(c)(2)(B); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004). Accordingly, the Court orders that the parties confer regarding the notice to be provided to class members and provide a status report to the Court regarding the same within twenty-one (21) days of this Order. This deadline is stayed if either party appeals this Order.

### VI. CLASS COUNSEL

Once a class has been certified, the Court must appoint class counsel. FED. R. CIV. P. 23(g). The Court may appoint the applicant seeking appointment where the applicant satisfies the requirements of Rule 23(g)(1) and Rule 23(g)(4). FED. R. CIV. P. 23(g)(2). Specifically, the Court must consider:

   (i)   the work counsel has done in identifying or investigating potential claims in the action;
   (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
   (iii) counsel's knowledge of the applicable law; and
   (iv)  the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). The Court must also consider whether the requested counsel fairly and adequately represents the interests of the class. FED. R. CIV. P. 23(g)(4).

The Court finds that Plaintiffs' counsel is qualified for appointment as class counsel in this case. Based on the state court record, the Court concludes that Pries Gordon, APLC's work on this case since its inception, including the time and resources expended in identifying and pursuing these and other claims across state and federal courts at every level, along with their experience in similar litigation with similar legal claims support the conclusion that they will fairly and adequately represent the interests of the class. Accordingly, the Court appoints Preis Gordon, APLC as class counsel.

## Conclusion

The Court certifies a class of all persons for whom Stanford Trust Company purchased or renewed SIBL CDs in Louisiana between January 1, 2007 and February 13, 2009. The Court appoints Pries Gordon, APLC as class counsel. The Court further orders that the parties confer regarding the notice to be provided to class members and provide a status report to the Court regarding the same within twenty-one (21) days of this Order. This deadline is stayed if either party appeals this Order.

Signed May 2, 2016.

_____
David C. Godbey
United States District Judge