IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| TROY LILLIE, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs | § | |
| | § | CIVIL ACTION NO.: 3:13-CV-03127-N |
| v. | § | MDL NO. 2099 |
| | § | |
| STANFORD TRUST COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**REPLY BRIEF IN FURTHER SUPPORT OF THE
MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
SEI INVESTMENTS COMPANY AND SEI PRIVATE TRUST COMPANY**


Dated: October 29, 2018

MORGAN, LEWIS & BOCKIUS LLP
Danny S. Ashby (TX Bar No. 01370960)
1717 Main Street, Suite 3200
Dallas, TX  75201-7347
Telephone:  +1.214.466.4000
danny.ashby@morganlewis.com

J. Gordon Cooney, Jr. (*admitted pro hac vice*)
(PA Bar No. 42636)
Ryan McCarthy (*admitted pro hac vice*)
(PA Bar No. 206961)
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:  +1.215.963.5000
Facsimile:  +1.215.963.5001
gordon.cooney@morganlewis.com
ryan.mccarthy@morganlewis.com

*Attorneys for Defendants SEI Investments
Company and SEI Private Trust Company*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT ..............................................................................................................3

    A.    Plaintiffs Misunderstand the Legal Standard That Governs Their Claim................3

        1.    Plaintiffs' View of Control-Person Liability Is Foreclosed by
            Precedent..........................................................................................................4

        2.    Plaintiffs Erroneously Attempt to Avoid the Dispositive Issues of
            Control. ............................................................................................................8

    B.    Plaintiffs Identify No Factual Dispute That Would Justify Denying or
       Deferring Summary Judgment Under the Applicable Standard for Control. ........12

        1.    Plaintiffs Do Not Contest Facts That Show SEI Lacked Any
            Ability to Control Stanford Trust Through Ownership or Contract. .........12

        2.    None of Plaintiffs' "Five Critical Facts" or Other Assertions
            Provide a Basis for Concluding that SEI Controlled Stanford Trust.........15

    C.    Plaintiffs' Rule 56(d) Declaration Fails to Specify Any Additional
       Discovery That Would Create a Genuine Issue of Material Fact Under the
       Applicable Standard for Control. ..........................................................................19

III.   CONCLUSION.........................................................................................................21

CERTIFICATE OF SERVICE ........................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Access Telecom, Inc. v. MCI Telecomm. Corp.*,
  197 F.3d 694 (5th Cir. 1999) ................................................................21

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) ...........................................17, 18

*Carlton v. Cannon*,
  No. H-15-012, 2016 WL 3959164 (S.D. Tex. July 22, 2016) .........6, 7, 10

*Curry v. TD Ameritrade, Inc.*,
  662 F. App'x 769 (11th Cir. 2016) ..............................................5, 7, 16

*Dusek v. JPMorgan Chase & Co.*,
  132 F. Supp. 3d 1330 (M.D. Fla. 2015).........................................5, 7, 17

*FindWhat Inv'r Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ..............................................................11

*First Va. Bankshares v. Benson*,
  559 F.2d 1307 (5th Cir. 1977) ................................................................11

*Friedman v. JP Morgan Chase & Co.*,
  No. 15-CV-5899 (JGK), 2016 WL 2903273 (S.D.N.Y. May 18, 2016) ....................5, 6, 7, 17

*Heck v. Triche*,
  775 F.3d 265 (5th Cir. 2014) .........................................................4, 5, 6, 11

*Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*,
  304 F. Supp. 3d 525 (N.D. Tex. 2018) ...................................................14

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................................................11

*In re Bernard L. Madoff Inv. Sec. LLC*,
  No. 17-512-bk, 2018 WL 3159228 (2d Cir. June 27, 2018).....................6

*In re K-tel Int'l, Inc. Sec. Litig.*,
  300 F.3d 881 (8th Cir. 2002) ..................................................................11

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
  939 F.2d 1257 (5th Cir. 1991) ................................................................21

*Kunzweiler v. Zero.Net, Inc.*,
   No. CIV.A.3:00-CV-2553-P, 2002 WL 1461732 (N.D. Tex. July 3, 2002) .........................11

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..............................................................................................11

*Macareno v. Karon*,
   Civ. No. 08-0292, 2010 WL 743564 (W.D. La. Feb. 24, 2010).............................................11

*Meadows v. Latshaw Drilling Co., L.L.C.*,
   866 F.3d 307 (5th Cir. 2017) ..............................................................................................20

*Raby v. Livingston*,
   600 F.3d 552 (5th Cir. 2010) ..............................................................................................20

*Rubinstein v. Collins*,
   20 F.3d 160 (5th Cir. 1994) ................................................................................................11

*Solow v. Heard McElroy & Vestal, L.L.P.*,
   7 So. 3d 1269 (La. Ct. App. 2009)...........................................................................4, 7, 12, 13

*Stone v. IRS*,
   No. 3:11-CV-2263-BK, 2012 WL 7186122 (N.D. Tex. July 16, 2012)..................................14

*Trans Pacific Interactive, Inc. v. U.S. Telemetry Corp.*,
   No. 2016-1298, 2017 WL 1376592 (La. Ct. App. 1st Cir. Apr. 12, 2017)..................... passim

*Willis v. Cleco Corp.*,
   749 F.3d 314 (5th Cir. 2014) ..............................................................................................13

**RULES**

Fed. R. Civ. P. 56(d) ..................................................................................................... passim

**STATUTES AND REGULATIONS**

La. Rev. Stat. § 51:702(4) ............................................................................................. passim

La. Rev. Stat. § 51:714(B) ............................................................................................ passim

17 C.F.R. § 230.405 ...............................................................................................................5

17 C.F.R. § 240.10b-5.............................................................................................................11

**OTHER AUTHORITIES**

*American Heritage Dictionary of the English Language* 424 (4th ed. 2000)................................17

*Random House Unabridged Dictionary* 469 (2d ed. 1987)........................................................17

## I.     INTRODUCTION

Despite significant investigations and diligence over the years, none of the Department of Justice, SEC, Receiver, or Stanford Official Investors Committee has asserted claims that SEI committed any wrongdoing in, or bears any responsibility for, the Stanford collapse.  If, in fact, SEI controlled any Stanford entity (or otherwise were responsible for investor losses), that claim would have been asserted by these parties.

In any event, if one cuts through its length and litany of allegations, Plaintiffs' Summary Judgment Opposition (Dkt. No. 261) demonstrates that the outcome-dispositive disagreement between the parties concerning control is legal, not factual.  Although SEI strongly disputes Plaintiffs' characterizations of its conduct and role, and of the history of this litigation, those disputes do not alter the outcome of this motion.  This is because Plaintiffs advance theories that (a) ignore that their primary liability claims have been dismissed, and (b) fundamentally misunderstand the standard governing their remaining claim for secondary liability under the control-person provision of the LSL.  *See* La. Rev. Stat. § 51:714(B).[1]

In Plaintiffs' view, SEI's supposed "enabling" of or "failing to prevent" Stanford Trust's fraudulent scheme suffices to make SEI liable for Stanford Trust's fraud as a control person.  But, as detailed in SEI's Summary Judgment Memorandum (Dkt. No. 250), a long line of cases hold that a claim for control-person liability cannot be premised on alleged "enabling" or "failing to prevent" a primary violation.  Instead, the plaintiff must show that the defendant had ***actual control*** of the specific conduct that creates the primary actor's liability, and that "control" is statutorily defined as "the power to direct" the primary violation.  La. Rev. Stat. § 51:702(4); *see* SEI SJ Mem. 21-22.  Under the statutory definition and pertinent cases, allegedly "enabling,"

---

[1]     Abbreviations in this reply memorandum follow the abbreviations defined in SEI's opening memorandum.

providing "essential services," or being in a position to "prevent" a primary violation does not qualify as control.  SEI SJ Mem. 22-23, 29-33.

Plaintiffs do not discuss this overwhelming legal authority.  They do not even cite the LSL's express definition of control or the relevant cases extensively discussed in SEI's brief. Ignoring the operative legal standards, Plaintiffs' Summary Judgment Opposition is grounded on factual contentions that either fall far short of showing control over Stanford Trust's primary violations or attempt to advance primary liability theories against SEI, even though all primary liability claims against SEI have been dismissed.  Plaintiffs cannot create a genuine dispute of material fact by simply assuming a legal standard for control-person liability that is contrary to precedent and that ignores that all primary liability claims against SEI have been dismissed.

Under the correct legal standard, Plaintiffs present no evidence of control that would justify denying SEI's motion, particularly given the clear terms of the Contract between SEI and Stanford Trust.  Plaintiffs do not deny the Contract's significance.  Nor do they deny that, under the Contract, SEI did not direct, and had no power to direct, Stanford Trust's policies or practices in connection with the marketing of SIBL CDs or the establishment of SIBL CD values or pricing.  The Contract shows that SEI's relationship with Stanford Trust was the opposite: *Stanford Trust* had the power to issue instructions to *SEI*, and *Stanford Trust* was responsible for the marketing, valuation, and pricing of SIBL CDs.  SEI SJ Mem. 25-26.  The Contract reveals that SEI was Stanford Trust's independent contractor, lacking the ability to direct Stanford Trust's alleged primary violations of the law.

Plaintiffs likewise fail to identify, in either their Opposition brief or accompanying Rule 56(d) declaration, any specific fact or evidence they could secure through discovery that would establish the control necessary for liability under a legally sound application of Section 714(B). Although SEI cited governing cases in its opening brief, explaining that a Rule 56(d) declaration

must identify the requested additional discovery with specificity and demonstrate how such discovery would help oppose summary judgment, *see* SEI SJ Mem. 19-20, Plaintiffs again ignore the governing cases, and do not attempt either showing in their declaration or Opposition brief. Moreover, not only does the Rule 56(d) declaration fail to identify any such specific discovery as required by binding Fifth Circuit precedent, it is plain that, at most, Plaintiffs would seek discovery to support a theory of "enabling," "necessary to," or "failing to prevent" that is insufficient to establish control-person liability as a matter of law.  No amount of additional discovery will change the fact that Plaintiffs' "control person" theory against SEI fails as a matter of law.  Plaintiffs' conclusory declaration and invalid legal theories provide no basis for deferring or delaying disposition of this motion, and the Court should grant summary judgment in SEI's favor.[2]

## II.     ARGUMENT

### A.     Plaintiffs Misunderstand the Legal Standard That Governs Their Claim.

Plaintiffs' sole remaining claim in this case is a claim for secondary liability under the control-person provision of the LSL, La. Rev. Stat. § 51:714(B).  *See* SEI SJ Mem. 4.  To prevail on that claim, Plaintiffs must show that SEI controlled a liable party with respect to that party's primary violations.  *See* La. Rev. Stat. § 51:714(B); May 2, 2016 Order at 12 (Dkt. No. 201). Plaintiffs ignore the operative legal standards and make no effort to advance factual contentions that satisfy the LSL's definition of control.  Tellingly, Plaintiffs devote barely four pages of their forty-two-page brief to discussing the legal requirements for control.  *See* SJ Opp. 33-36.[3]

---

[2]      SEI is concurrently filing a response to Plaintiffs' Motion for Dismissal of the Summary Judgment (Dkt. No. 263).  Among other things, that separate response refutes Plaintiffs' assertions about the discovery history of this case.

[3]      In addition, Plaintiffs cite a handful of cases for the proposition that control-person liability often involves triable questions of fact.  *See* SJ Opp. 33-35.  But courts regularly grant summary judgment (or motions to dismiss), as SEI noted in its opening brief.  SEI SJ Mem. 20 n.7.

And their cursory discussion of the legal standard for control-person liability is flawed in two respects.  First, Plaintiffs ignore the many authorities discussed in SEI's opening brief rejecting Plaintiffs' theories based on allegedly "enabling," being "necessary to," or "failing to prevent" the fraud.  Second, Plaintiffs wrongly assert that SEI could be liable under the control-person liability standard if SEI failed to exercise reasonable care, even in the absence of control.  The LSL makes clear that the issue of exercising reasonable care only comes into play if SEI is first found to be a control person, and even then would only provide SEI an additional possible defense to liability.  The provision does not provide Plaintiffs a substitute for having to establish control.  Because Plaintiffs' Opposition depends on these legally faulty premises, SEI's motion should be granted.

> **1.      Plaintiffs' View of Control-Person Liability Is Foreclosed by Precedent.**

The LSL defines "control" as "the possession, direct or indirect, of the power to ***direct or cause the direction*** of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  La. Rev. Stat. § 51:702(4) (emphasis added); *see also* SEI SJ Mem. 21.  The Opposition does not even cite, much less discuss, this definition.

Nor do Plaintiffs address the many cases that illustrate how this definition of control has been applied to foreclose the very types of theories advanced by Plaintiffs.  SEI SJ Mem. 21-23.  For example, Plaintiffs ignore *Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So. 3d 1269 (La. Ct. App. 2009).  There, the court affirmed summary judgment in favor of an auditor defendant, holding that the auditor's "power to halt" the sale giving rise to the primary liability – by either withholding or withdrawing its audit opinion – did not qualify as control under Section 714(B).  *Id.* at 1281.  The Fifth Circuit has recognized that *Solow*'s conclusion "is surely a correct interpretation of the control person statute."  *Heck v. Triche*, 775 F.3d 265, 285 (5th Cir. 2014).

Plaintiffs are also silent about the federal cases that SEI discussed, even though Plaintiffs concede that the federal standard for control is instructive.  SJ Opp. 33 n.28.[4]  Several of these federal cases involved defendants that allegedly "enabled" others' Ponzi schemes by providing supposedly "essential services," and the courts concluded that this relationship was not one of control, as a matter of law.  SEI SJ Mem. 29-33.  Consistent with *Solow*, two district courts granted motions to dismiss control-person claims against defendants that had provided allegedly "indispensable" banking services for Bernard Madoff's Ponzi scheme.  *Dusek v. JPMorgan Chase & Co.*, 132 F. Supp. 3d 1330, 1351 (M.D. Fla. 2015), *aff'd*, 832 F.3d 1243 (11th Cir. 2016); *Friedman v. JP Morgan Chase & Co.*, No. 15-CV-5899 (JGK), 2016 WL 2903273, at *11 (S.D.N.Y. May 18, 2016), *aff'd*, 689 F. App'x 39 (2d Cir. 2017).  In these cases, both sets of Madoff plaintiffs insisted (i) that defendants had "the power and ability . . . to terminate their banking relationship" with Madoff, (ii) that their banking services were "essential to the survival" of the Ponzi scheme, (iii) that defendants "had the 'ability to shut Madoff down at any point in time,'" and (iv) that the "scheme to defraud would not have succeeded but-for Defendants' involvement."  In dismissing the claims against the defendants, the courts held that these allegations failed to allege control as a matter of law and therefore failed to state a claim. *Friedman*, 2016 WL 2903273, at *11; *see also Dusek*, 132 F. Supp. 3d at 1351.

Plaintiffs also ignore *Curry v. TD Ameritrade, Inc.*, 662 F. App'x 769 (11th Cir. 2016), where a unanimous Eleventh Circuit panel upheld the trial court's 12(b)(6) dismissal of control claims against a brokerage firm, TD Ameritrade, that provided the trading platform and acted as

---

[4]     Courts agree that the LSL's conception of control tracks the federal standard.  *E.g.*, *Heck*, 775 F.3d at 283; *Trans Pacific Interactive, Inc. v. U.S. Telemetry Corp.* ("*Trans Pacific II*"), No. 2016-1298, 2017 WL 1376592, at *5 (La. Ct. App. 1st Cir. Apr. 12, 2017), *reh'g denied* (May 1, 2017), *writ denied*, 227 So.3d 294 (La. Sept. 29, 2017).  That conclusion is bolstered by the fact that the LSL's statutory definition of "control" is materially identical to the definition in federal law.  *Compare* La. Rev. Stat. § 51:702(4), *with* 17 C.F.R. § 230.405.

a custodian for a Ponzi scheme.  Even though the plaintiffs alleged that the primary actor "could

not have perpetuated the Ponzi scheme without the assistance of [TD Ameritrade]," their

allegations did not "even remotely approach[] the level of control necessary to state a claim."  *Id.*

at 771-772; *see also In re Bernard L. Madoff Inv. Sec. LLC*, No. 17-512-bk, 2018 WL 3159228,

at *5 (2d Cir. June 27, 2018) (summary order) (holding that control could not be based on

allegations that defendant's "contributions to the Ponzi scheme allowed the scheme to continue,

and that, had he chosen not to assist [the primary violator], the scheme would have collapsed

earlier than it did").

In these cases, just as here, the alleged "[e]xercise of influence, without power to direct or

cause the direction of management and policies through ownership of voting securities, by

contract, or in any other direct way, is not sufficient to establish control[.]"  *Friedman*, 2016 WL

2903273, at *11 (citation omitted).  Whether a defendant's services are allegedly "essential" to

the primary actor is immaterial to the question of control.  The defendant has the requisite

control only if it has the "power to direct."  La. Rev. Stat. § 51:702(4).  And that power must not

only relate to the primary actor's general operations; it must reach "the specific transaction or

activity upon which the primary violation is based."  *Heck*, 775 F.3d at 283; *accord Trans

Pacific Interactive, Inc. v. U.S. Telemetry Corp.* ("*Trans Pacific II*"), No. 2016-1298, 2017 WL

1376592, at *5 (La. Ct. App. 1st Cir. Apr. 12, 2017), *reh'g denied* (May 1, 2017), *writ denied*,

227 So.3d 294 (La. Sept. 29, 2017); *Carlton v. Cannon*, No. H-15-012, 2016 WL 3959164, at *7

(S.D. Tex. July 22, 2016).

Plaintiffs do not even engage with these settled principles.  Instead, they advance factual

contentions that fall short of control and that are foreclosed by these authorities.  Plaintiffs

repeatedly assert that "SEI *enabled* the Stanford Ponzi Scheme."  SJ Opp. 3 (emphasis added);

*see also id.* at 2, 4, 5, 27, 28, 36, 37, 40.  But the services provided by the dismissed auditors,

banks, and brokerage firms in *Solow*, *Dusek*, *Friedman*, and *Curry* also allegedly "enabled" or were "necessary to" the fraudulent schemes in those cases, and that was insufficient to establish control.  Plaintiffs say that the scheme could not have been effected "but for" SEI's services, SJ Opp. 37, and "would never have started" without SEI, *id.* at 36.  But the same is true of the allegedly indispensable services in the cases just discussed: "allegations that a scheme to defraud would not have succeeded but-for Defendants' involvement[] are insufficient."  *Friedman*, 2016 WL 2903273, at *11 (citation and quotation marks omitted).  Plaintiffs say that SEI was "in a position to prevent the violation by the primary violator."  SJ Opp. 39 (quotation marks omitted).  A service provider's "power to halt" a fraudulent transaction, *Solow*, 7 So. 3d at 1281, or "power to terminate" its essential services, *Dusek*, 132 F. Supp. 3d at 1351, does not establish control.

Plaintiffs urge the Court to examine a supposed "total 'web' of control" purportedly "exercised by the SEI Defendants in Stanford's operations," SJ Opp. 37, but fail to make ***any*** factual assertions of control, much less assertions that SEI controlled the primary violations by Stanford Trust.  Showing that a defendant controlled some aspects of the primary violator's operations is insufficient; what is required is a showing "that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based."  *Heck*, 775 F.3d at 283.  And Plaintiffs offer no evidence that SEI controlled the offer or sale of CDs, the creation of the Ponzi scheme, or the establishment of CD values.  *See Carlton*, 2016 WL 3959164, at *7 (explaining that even "allegations about day-to-day participation in corporate affairs are insufficient to allege the ability to control the '***specific***' transaction identified as the basis for primary liability") (emphasis added).[5]

---

[5]      In variations on these themes, Plaintiffs also claim they hope to prove "that SEI showed Stanford how to run the trust and how to set up the trust platform to solicit the IRA accounts" and was "the sole source provider for all of [Stanford Trust's] financial and administrative operations."  SJ Opp. 38, 42.  But even if Plaintiffs could prove that SEI provided crucial operational "assistance" and services to the primary violator, *Curry*, 662 F. App'x at 771,

The theories behind Plaintiffs' remaining control-person claim are simply foreclosed by applicable case law.

> **2.      Plaintiffs Erroneously Attempt to Avoid the Dispositive Issues of Control.**

Instead of focusing on the relationship between SEI and the alleged primary actor, Stanford Trust, and ignoring that all primary liability claims against SEI have been dismissed, Plaintiffs repeatedly turn the discussion to irrelevant duties supposedly owed by SEI to the Plaintiffs and other investors.  *See, e.g.*, SJ Opp. 26, 27, 30, 41.

For example, Plaintiffs fault SEI for allegedly not investigating Stanford Trust's marketing or valuation of the SIBL CDs.  SJ Opp. 28, 30-31, 36, 41.  They devote a full section to SEI's supposed lack of due diligence.  SJ Opp. 40-41.  They refer to SEI's supposed "hedge fund expertise" in an effort to imply that SEI should have uncovered the Stanford Ponzi scheme.  SJ Opp. 42; *see also id.* at 3, 4, 5, 9, 14, 15, 28, 29, 32, 36, 37, 39, 40.[6]  And they include a section of their Opposition entitled "Relationship Between SEI And The IRA Plaintiffs."  SJ Opp. 38.  But SEI's supposed lack of investigation or due diligence in connection with SIBL CDs or any supposed relationship with the IRA Plaintiffs have nothing to do with whether SEI controlled Stanford Trust.

Plaintiffs' theories in this regard suffer from two fatal legal defects.  First, Plaintiffs fundamentally misread the plain language and structure of the control-person liability section of the LSL.  And second, Plaintiffs ignore that all primary liability claims against SEI have been

---

that would not establish that SEI *directed* the conduct by Stanford Trust that gave rise to primary liability, *see id.* at 772.

[6]      In addition to having no bearing on the question of SEI's supposed control over Stanford Trust, whatever hedge fund valuation services SEI affiliates do or do not provide to other customers is also irrelevant because the Contract unmistakably shows that Stanford Trust, not SEI, was responsible for the valuation of the SIBL CDs.  *See infra* Section II.B.1.

dismissed, and the only remaining claim in the case necessarily turns on their having to prove that SEI controlled Stanford Trust's primary violations.

With respect to the first of these fatal defects, Plaintiffs wrongly contend that "Section 714(B) provides for strict liability for failure to comply with [Section] 712 unless the person 'sustains the burden of proof that he [SEI] did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist.'" SJ Opp. 35 (second alteration in original). Plaintiffs' contention fails as a matter of basic statutory construction. The quoted language does not provide a plaintiff an alternative basis to establish control-person liability; instead, it gives an additional defense to a person found to be a control person. The text of Section 714(B) and case law make plain that such questions arise only if Plaintiffs were able to establish, as a threshold matter, that SEI possessed the requisite control over Stanford Trust.

The text of Section 714(B) proceeds in two parts. As relevant here, it first declares that a "person who directly or indirect controls a person liable under [Section 714(A)] . . . is liable jointly and severally with and to the same extent as the person liable under [Section 714(A)]." La. Rev. Stat. § 51:714(B). The statute then provides that one found to be a control person may *avoid liability* through an affirmative defense: *a control person* is liable "*unless* [that] person . . . sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist." *Id.* (emphasis added).

As Louisiana's Court of Appeal has explained, the question "whether [the defendant] knew of or in the exercise of reasonable care could have known of . . . alleged untruths or omissions" does not arise unless the plaintiff has first proven control. *Trans Pacific II*, 2017 WL

1376592, at *6.  "Only if [the defendant] is found to be a 'control person' do the issues of whether he knew or could have known of any alleged misrepresentations with respect to these issues require examination by [the] court."  *Id.* at *6 n.6.

As in *Trans Pacific II*, the Court need not "reach those [knowledge, reasonable care, and due diligence] issues because the threshold requirement of derivative liability under Section 714(B) is to determine whether [SEI] was a 'control person' within the meaning of the applicable law."  *Id.*  Plaintiffs do not even attempt to make that threshold showing.

Plaintiffs are also incorrect (*see* SJ Opp. 27, 29, 30, 42) that SEI is subject to control-person liability because it did not inform account holders that it had not valued the SIBL CDs.  *See Trans Pacific II*, 2017 WL 1376582, at *6 n.6 (rejecting plaintiffs' allegations that the defendant "had an obligation to inform [the plaintiff] about [the alleged primary violator's] financial position").  As the *Carlton* court reasoned, an alleged failure to take action with respect to the Plaintiffs would "not show that [SEI] had the ability to ***control*** [Stanford Trust's] statements."  *Carlton*, 2016 WL 3959164, at *8 (emphasis added).  Control-person liability "is based on the power to control, not on a duty to correct."  *Id.*

Plaintiffs seem to urge these theories against SEI in a manner that is not only divorced from the requirements for control-person liability, but is also contrary to this Court's prior dismissal of all primary liability claims.  Arguments about alleged duties and supposed failures of due diligence are not control-person liability claims; if anything, they are claims seeking to establish primary liability against securities issuers or sellers.

In addition to listing various alleged duties of SEI, Plaintiffs also devote a full paragraph to case law discussing securities defendants' duty not to mislead investors through incomplete disclosures.  SJ Opp. 38.  Courts have held that such misleadingly incomplete statements by

certain persons may sometimes be the sort of actionable misrepresentation that provides a basis for primary securities fraud liability. *See, e.g.*, *First Va. Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir. 1977). Indeed, many of Plaintiffs' citations addresses the federal law standards for primary liability under Rule 10b-5. *See In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 898 (8th Cir. 2002); *First Va. Bankshares*, 559 F.2d at 1316-17; *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 249 (5th Cir. 2009); *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011); *Kunzweiler v. Zero.Net, Inc.*, No. CIV.A.3:00-CV-2553-P, 2002 WL 1461732, at *10 (N.D. Tex. July 3, 2002); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 490-91 (S.D.N.Y. 2011). Similarly, the case Plaintiffs cite for the assertion that "the standard under Louisiana law is negligence," SJ Opp. 35, addressed the standard under Louisiana law for ***primary liability*** and had nothing to do with control. *See Macareno v. Karon*, Civ. No. 08-0292, 2010 WL 743564, at *4 (W.D. La. Feb. 24, 2010).

These theories and cases have no bearing on SEI's summary judgment motion. In its September 22, 2015 Order (Dkt. 198), the Court determined that all primary liability claims asserted in this case are foreclosed by the Fifth Circuit's controlling decision in *Heck v. Triche*, 775 F.3d 265 (5th Cir. 2014). Under the Fifth Circuit's ruling, as this Court explained, Plaintiffs here had to have alleged that SEI "either (1) passed title to the purchaser or solicited the title-passing transaction or (2) sold the securities to the purchaser." September 22, 2015 Order at 7. Because Plaintiffs plainly made neither sort of allegation, their primary liability claim warranted dismissal, *id.*, and only Plaintiffs' claim for control-person liability remains.

The dispositive issue before the Court is whether SEI possessed the requisite control over Stanford Trust's primary violations of the LSL. There is no genuine factual dispute on this outcome-determinative question.

**B.      Plaintiffs Identify No Factual Dispute That Would Justify Denying or Deferring Summary Judgment Under the Applicable Standard for Control.**

Plaintiffs recognize that to successfully oppose SEI's motion for summary judgment, they must provide evidence showing a genuine dispute of material fact.  SJ Opp. 33; *see also* SEI SJ Mem. 18-19.  Their Opposition fails to make that showing.  Plaintiffs do not contest key facts identified by SEI that show SEI did not have the power to direct the primary violations by Stanford Trust.  And the factual assertions on which Plaintiffs rely are both irrelevant given the correct legal standard and lacking evidentiary support.

**1.      Plaintiffs Do Not Contest Facts That Show SEI Lacked Any Ability to Control Stanford Trust Through Ownership or Contract.**

As already explained, the LSL defines control as "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  La. Rev. Stat. § 51:702(4).  SEI's opening brief identified the many facts showing that SEI had no ability to control Stanford Trust through ownership or contract.

The parties agree that SEI had no ownership interest in Stanford Trust.  SEI's opening brief pointed to Al Del Pizzo's testimony that SEI did not have an ownership interest in Stanford Trust, SEI SJ Mem. 8 (¶ 18) (citing D.App. 57).  In their responses to SEI's statement of undisputed facts (Dkt. No. 261-1) ("Pls.' SOUF Resp."), Plaintiffs acknowledge that SEI's statement that "'SEI did not have an ownership interest in Stanford Trust' is not contested."  Pls.' SOUF Resp. 7 (Resp. to ¶ 18).  This statutory ground for demonstrating control undisputedly is not available to Plaintiffs.

Second, as Plaintiffs concede, SEI did not have a representative on the board of directors of Stanford Trust.  Pls.' SOUF Resp. 7 (Resp. to ¶ 19).  That in itself is a strong sign that SEI lacked the relevant sort of control because, as the *Solow* case shows, the text of Section 714(B)

"indicates that a person who exercises control refers to a general partner, executive, officer, director, or a person occupying a similar status or performing a similar function." *Solow*, 7 So.3d at 1281.  Much like the accounting firm in *Solow*, SEI "occupied no such status and performed no such function in relation to the [Stanford Trust]." *Id.*[7]

Plaintiffs also concede that the Contract did not give SEI the requisite control over Stanford Trust.  Plaintiffs acknowledge that "the contract is evidence of one of the roles SEI played" and do not question its authenticity.  SJ Opp. 33.  They do not deny that the Contract contains provisions demonstrating the absence of control.  Pls.' SOUF Resp. 10-16 (Resp. to ¶¶ 26, 28-33, 35-38).[8]  Nor do Plaintiffs dispute – or even address – SEI's demonstration that this language establishes a relationship in which SEI lacked control over Stanford Trust with regard to the marketing or valuation of SIBL CDs.  *See* SEI SJ Mem. 25-28.

Plaintiffs do not point to any language in the Contract or identify evidence (or even potential evidence) outside the Contract to support a claim of control.  Instead, Plaintiffs purport to contest SEI's reliance on the Contract "to the extent [SEI] seeks a legal determination or seeks to describe or limit the liabilities or duties SEI has to the IRA Plaintiffs based upon the Louisiana Securities Act at La. Rev. Stat. 51:714(B)."  Pls.' SOUF Resp. 10-16 (Resp. to ¶¶ 26, 28-33, 35-38).  This is not a valid basis for opposing SEI's motion under Rule 56.  At summary judgment, the burden on the nonmovant is "to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim."  *Willis v. Cleco Corp.*, 749 F.3d

---

[7]     *Solow* thus exposes the error in Plaintiffs' suggestion that SEI exercised control because it supposedly "was occupying a similar status or performing similar functions to Stanford Trust."  SJ Opp. 42.  The pertinent question, given Section 714(B)'s text, is not the similarity of SEI's status or functions to those of the alleged primary violator, but their similarity to the status or functions of paradigmatic control persons like officers and directors.

[8]     This language includes an integration clause reflecting that the Contract contained the parties' entire understanding, could not be amended except in writing, and superseded all prior agreements and understandings. *See* SEI SJ Mem. 10 (¶ 26); Pls.' SOUF Resp. 10 (Resp. to ¶ 26).

314, 317 (5th Cir. 2014) (citation, quotation marks, and brackets omitted).  Plaintiffs do not

attempt to identify any such evidence.  *See, e.g.*, *Holmes v. N. Tex. Health Care Laundry Coop.*

*Ass'n*, 304 F. Supp. 3d 525, 540 (N.D. Tex. 2018) ("When the nonmovant fails to cite or refer to

evidence that exists in the summary judgment record, 'that evidence is not properly before the

district court.'"  (citation omitted)); *Stone v. IRS*, No. 3:11-CV-2263-BK, 2012 WL 7186122, at

*3 (N.D. Tex. July 16, 2012) ("[T]o defeat a motion for summary judgment, the non-movant

must direct the court's attention to facts that support the essential elements of his claim, and

failure to raise an argument in opposition to summary judgment constitutes abandonment."

(citation omitted)).  And insofar as they rely on frequent invocation of their counsel's Rule 56(d)

declaration, that vague and conclusory declaration fails to provide any basis for denying or

deferring summary judgment for the reasons discussed in Section C below.

Beyond expressly or effectively conceding that the Contract does not establish that SEI

controlled Stanford Trust, Plaintiffs concede additional facts that confirm that the parties

***performed*** the Contract in accordance with it terms, particularly with respect to Stanford Trust

establishing the values of SIBL CDs recorded in Trust 3000.  Specifically, Plaintiffs do not

contest that:

- SEI established an email address "[t]o facilitate its receipt of instructions from Stanford Trust regarding SIBL CD information," Pls.' SOUF Resp. 17 (Resp. to ¶ 42);

- Stanford Trust "instruct[ed] SEI to set up data fields for the SIBL CDs," Pls.' SOUF Resp. 18-19 (Resp. to ¶ 45);

- "Stanford Trust . . . would send emails instructing SEI to update information regarding existing SIBL CD assets," *id.*;

- "Stanford Trust provid[ed] the specific information to be used" to update information regarding existing SIBL CD assets, *id.*; and

- "[i]n order for interest on SIBL CDs to appear in Trust 3000, each month a Stanford Trust employee would calculate any interest due and post that information in Trust 3000," Pls.' SOUF Resp. 20 (Resp. to ¶ 49).

Through these concessions, Plaintiffs acknowledge that, consistent with the Contract, SEI took instructions from Stanford Trust concerning the data to be entered in Trust 3000 concerning SIBL CDs' pricing and valuation.  SEI did not control Stanford Trust.

Plaintiffs wrongly assert that SEI has attempted to turn this matter into a breach of contract case.  *See* SJ Opp. 4, 10.  To the contrary, SEI demonstrated that the relevant relationship between SEI and Stanford Trust arose out of contract, and that this Contract forecloses a theory that SEI controlled Stanford Trust, much less that SEI controlled the primary violations by Stanford Trust.  At a bare minimum, the Contract affords Plaintiffs no basis to establish control.

Plaintiffs' concessions and failure to identify evidence to properly contest SEI's statement of material facts demonstrate that SEI had no ability to control Stanford Trust.

> **2.      None of Plaintiffs' "Five Critical Facts" or Other Assertions Provide a Basis for Concluding that SEI Controlled Stanford Trust.**

Plaintiffs assert that there are "[f]ive critical facts" for purposes of SEI's summary judgment motion.  SJ Opp. 28-29.  Far from being helpful to Plaintiffs, these "critical facts" make plain that the factual disputes identified by Plaintiffs are irrelevant to the question of control under the correct legal standards.  None remotely supports a finding that SEI had "the power to direct or cause the direction of the management and policies of [Stanford Trust]" in connection with the specific actions giving rise to primary liability.  La. Rev. Stat. § 51:702(4).

The first two supposedly critical facts concern SEI's supposed knowledge or lack of due diligence about Stanford Trust's activities.  In this regard, Plaintiffs first stress a purported decision by Bear Stearns and Pershing not to provide certain services to Stanford-affiliated

entities.  SJ Opp. 28.  Putting aside that this "critical fact" is unsupported by any cited evidence, *see id.* at 28, 31, SEI's supposed knowledge about these third parties' business decisions provides no evidence that SEI controlled Stanford Trust.  *Cf. Curry*, 662 F. App'x at 770 (concluding that Plaintiffs had failed to adequately plead control even though defendant furnished its trading platform after a previous vendor "ended [its] relationship" with the primary actor).  Similarly, Plaintiffs' second "critical fact" contention, that SEI "performed no due diligence . . . on the method of marketing the [SIBL] CDs to Plaintiffs or the valuation of the [SIBL] CDs," SJ Opp. 28, offers no proof that SEI controlled Stanford Trust.  As discussed above, any alleged absence of due diligence is irrelevant to the question of control.  *See supra* pp. 8-10; *Trans Pacific II*, 2017 WL 1376592, at *5.

Plaintiffs' third supposedly "critical fact" concerns the monthly reports that were generated by Trust 3000.  But the generation of these reports arose from the obligation created by the Contract, which as discussed above, did not give SEI control over the conduct of Stanford Trust at issue in this matter.  Under the Contract, it was Stanford Trust that bore responsibility for pricing SIBL CDs and giving that information to SEI to input into Trust 3000, as Plaintiffs essentially concede.  *See supra* pp. 14-15; SEI SJ Mem. 11-15.  Once input into the system, Trust 3000 automatically sent the information that Stanford Trust had provided to the outside printing company, R.R. Donnelley.  SEI SJ Mem. 15-16.  Nothing in this process demonstrates that SEI had control over Stanford Trust or establishing the CD values.  Nor does anything on the account statements themselves suggest SEI had such control.  The statements do not suggest in any way that they are statements from SEI; to the contrary, they state that they are statements of Stanford Trust and specifically direct the customer to address any questions about SIBL CDs to a "Stanford Group Company financial advisor."  D.App. 194.

16

For their fourth "critical fact," Plaintiffs rely on a supposed "cradle to grave" relationship between SEI and Stanford Trust, in which SEI allegedly "provided all of the administrative services from [Stanford Trust's] inception in 1998 to the closing date in February 2009."  SJ Opp. 29.  By its own terms, a "cradle to grave" description merely characterizes the duration of a relationship.[9]  That durational connotation is also confirmed by the only supporting evidence that Plaintiffs cite for this sweeping proposition – *i.e.*, Larry Britton's testimony about when SEI began its relationship with Stanford Trust.  *See* P.Sealed.App. 221 (PG ID 24).  Indeed, even if the Court were to credit the actually unsupported allegation that SEI provided "all of the administrative services," that allegation still would not establish that SEI controlled the primary violations of Stanford Trust under the governing law.  A plaintiff cannot demonstrate control merely by noting the length or scope of a contractual relationship that does not confer control. The bank defendants in the Madoff cases had a much longer "continuous banking relationship" with Madoff's company – running from 1986 to the scheme's 2008 collapse – and provided services alleged to have been essential to the Ponzi scheme, and yet the courts concluded that the duration and scope of services did not create control.  *Dusek*, 132 F. Supp. 3d at 1338; *Friedman*, 2016 WL 23903273, at *2.  Indeed, in *Carlton*, the court rejected a control person claim against a defendant whose alleged "***cradle to grave***" relationship with the primary violator was far more extensive than the contractual relationship between SEI and Stanford Trust.  *Carlton v. Cannon*, 184 F. Supp. 3d 428, 495-96 (S.D. Tex. 2016) (emphasis added).  That defendant was the primary violator's majority shareholder, had appointed a representative to the board, and held the

---

[9]    The phrase "cradle to grave" is a colloquial way of conveying that something or someone was present from the beginning to the end of some other thing or entity, and appears in a variety of contexts without any suggestion of control.  *See, e.g., American Heritage Dictionary of the English Language* 424 (4th ed. 2000) (defining "cradle-to-grave" as "[p]resent or in effect throughout a person's lifetime" or "[o]ccurring or persisting from beginning to end"); *Random House Unabridged Dictionary* 469 (2d ed. 1987) (defining "cradle-to-grave" as "extending throughout one's life, from birth to death").

largest amount of the primary actor's secured debt.  *Id.* at 495.  The plaintiffs also argued that the

defendant "was deeply involved in and responsible for [the primary actor's] operational strategy

and financing from cradle to grave."  *Id.* (citation and quotation marks omitted).  Even so, the

court refused to find sufficient allegations of control "without factual allegations showing or

supporting an inference that he had the ability to control the public statements" giving rise to the

primary liability claims.  *Id.* at 495-96.  If a "cradle to grave" relationship that, unlike the

allegations here, involved "operational strategy and financing," control over the primary actor's

voting securities, the ability to appoint a representative to the board, and ownership of "the

largest amount of secured debt *still* was not sufficient to plead control, the contractual

relationship here comes nowhere close to establishing a genuine dispute of material fact.

The fifth "critical fact" Plaintiffs identify is the existence of the Stanford Ponzi scheme

itself.  SJ Opp. 29.  The problem for Plaintiffs, of course, is that the scheme's mere existence

does not imply that SEI controlled it.  The Ponzi scheme may establish the necessary primary

violation predicate for Plaintiffs' secondary liability claim (a point that SEI assumes *arguendo*

for purposes of the present motion), but it does nothing to suggest that SEI controlled it.  Indeed,

despite years of investigation into the Ponzi scheme, the government, the Receiver, and the

Stanford Official Investors Committee have never asserted that SEI controlled any aspect of the

fraud.

Apart from the five supposedly "critical facts," Plaintiffs also point to SEI's purported

role in preparing tax forms that reported a value for SIBL CDs to the Internal Revenue Service.

This reporting requirement, however, is rooted in the Contract, as Plaintiffs acknowledge.  *See,*

*e.g.*, SJ Opp. 30, 36.  And the Contract shows that SEI prepared these forms according to

Stanford Trust's instructions.  D.App. 91 (providing that SEI's services of [t]ax and regulatory

forms production and printing" were "based on instructions and control file data provided by

18

[Stanford Trust]").  In addition, the Contract states that "the information to be included must be referred to [Stanford Trust's] tax department in order to ensure compliance with federal, state and local regulations."  *Id.*  Consistent with these provisions, testimonial evidence from Mr. Del Pizzo confirms that the tax forms were prepared using information provided by Stanford Trust. D.App. 68-69 ("Q.  And in the case both of tax reporting and the monthly or quarterly account statements, the data in Trust 3000 as to the value of the CD's was data provided by Stanford Trust Company, correct?  A.  Yes.").  SEI's role in preparing these forms only further illustrates SEI's lack of control over Stanford Trust.

In sum, the undisputed evidence in this case conclusively shows that SEI had no control over any of the acts of Stanford Trust that would give rise to Stanford Trust's primary liability. That includes the offering or selling of SIBL CDs, the establishment of the Ponzi scheme, or the establishment of the values or interest Stanford Trust assigned to the CDs.  Plaintiffs fail to identify any genuine dispute of material fact, and the Court should grant SEI's motion.

**C.      Plaintiffs' Rule 56(d) Declaration Fails to Specify Any Additional Discovery That Would Create a Genuine Issue of Material Fact Under the Applicable Standard for Control.**

With neither the law nor the facts on their side, Plaintiffs devote considerable energy attempting to postpone any ruling on SEI's summary judgment motion on the theory that they have not yet been afforded sufficient discovery.  But Plaintiffs' efforts to do so fail to meet the requirements set by Rule 56(d) and applicable case law.  Here again, SEI explained the governing law regarding Rule 56(d) in its opening brief, SEI SJ Mem. 19-20, and yet Plaintiffs did not attempt to meet those legal requirements.

Under Fifth Circuit precedent, a Rule 56(d) declaration cannot rest on conclusory assertions.  Instead, the non-movant must show, among other things, "how the additional

discovery will create a genuine issue of material fact." *Meadows v. Latshaw Drilling Co., L.L.C.*, 866 F.3d 307, 314 (5th Cir. 2017). That requires identifying "specified facts, susceptible of collection within a reasonable time frame, [that] probably exist and indicat[ing] how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion,'" *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citation omitted).

Despite having been specifically alerted to these requirements in SEI's opening brief, Plaintiffs' Rule 56(d) declaration (Dkt. No. 263-1) makes no effort to satisfy the governing standards. Plaintiffs' declaration offers a litany of objections to how discovery in this case has proceeded. But in the end – and putting aside for the moment Plaintiffs' mischaracterization of the record – the declaration merely asserts that Plaintiffs have not gotten some of the discovery they want. It does not identify any specific facts that might create a genuine issue of material fact on the central question of SEI's control (or lack of control) over Stanford Trust's underlying fraudulent actions.

Plaintiffs acknowledge the declaration's lack of specificity by insisting that they "cannot identify *all* of the specific types of evidence [they] intend to present to the Court." Pls.' 56(d) Declaration 7 (¶ 29). But the unacknowledged and far bigger problem is that Plaintiffs do not identify *any* specific evidence they would present to the Court if additional discovery were permitted – much less how that evidence could help them avoid summary judgment.

Plaintiffs assert in conclusory fashion that "[t]he information is essential to Plaintiffs' opposition to SEI's Motion for Summary Judgment, is exclusively in the possession of SEI, but is unavailable to Plaintiffs." Pls.' 56(d) Declaration 8 (¶ 35). It fails to identify "specified facts" that could "influence the outcome of the pending summary judgment motion." *Raby*, 600 F.3d at 561. Unable to identify any of the information that supposedly is essential to the pending

summary judgment motion, Plaintiffs "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991); *accord Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999) (holding that district court properly denied additional discovery in light of nonmovant's failure "to specify its intended discovery or how such discovery would assist it in opposing summary judgment").

Moreover, it is plain from reading both the Rule 56(d) declaration and Plaintiffs' Opposition that they **do not even contend** that discovery will reveal **control as required by law**. Instead, they want to take broad discovery that they believe will show that SEI supposedly "enabled," or "failed to prevent," or was "essential to" the fraud by Stanford Trust.  Or they want to impose significant discovery in support of "duty," "due diligence," or other primary liability claims that have been dismissed.  The briefing clearly shows that the theories Plaintiffs advance are not cognizable as a matter of law.

This Court should not delay disposition of this matter and burden SEI with additional discovery to permit Plaintiffs to gather evidence to support claims that are invalid as a matter of law.  Plaintiffs' Rule 56(d) declaration furnishes no basis to defer a ruling on SEI's motion for summary judgment.  All the evidence in this case shows that SEI did not have control over Stanford Trust – let alone control over Stanford Trust's underlying fraudulent activities – under the correct legal standard for control.  Plaintiffs offer no reason to believe that any amount of additional discovery will alter that, and so SEI's summary judgment motion should be granted.

## III.   CONCLUSION

For these reasons and the reasons in SEI's opening memorandum, SEI respectfully requests that the Court grant this motion for summary judgment and enter judgment in SEI's

favor.  Alternatively, if the Court defers a ruling on SEI's summary judgment motion, it should

hold the motion in abeyance and establish tight parameters around any discovery going forward.

Dated: October 29, 2018                    Respectfully submitted,

                                           */s/ Danny S. Ashby*

                                           MORGAN, LEWIS & BOCKIUS LLP
                                           Danny S. Ashby (TX Bar No. 01370960)
                                           1717 Main Street, Suite 3200
                                           Dallas, TX  75201-7347
                                           Telephone:  +1.214.466.4000
                                           danny.ashby@morganlewis.com

                                           J. Gordon Cooney, Jr. (*admitted pro hac vice*)
                                           (PA Bar No. 42636)
                                           Ryan McCarthy (*admitted pro hac vice*)
                                           (PA Bar No. 206961)
                                           1701 Market Street
                                           Philadelphia, PA  19103-2921
                                           Telephone:  +1.215.963.5000
                                           Facsimile:  +1.215.963.5001
                                           gordon.cooney@morganlewis.com
                                           ryan.mccarthy@morganlewis.com

                                           *Attorneys for Defendants SEI Investments*
                                           *Company and SEI Private Trust Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 29th day of October, 2018, all counsel of record were served using the CM/ECF system.

*/s/ Danny S. Ashby*
Danny S. Ashby